FRANK SMITH and MABEL SMITH, by Next Friend, ANNA ELIZABETH ROTH, v. RICHARD MEDERACKE, Appellant.

In Banc, February 11, 1924.

1. **NEGLIGENCE:** Automobile: On Wrong Side of Street: Right-Hand Ordinance. Deceased alighted from a north-bound street

Smith v. Mederacke.

car at a busy crossing, and passed around westward in front of it, to reach the usual place for boarding east-bound cars. Numerous automobiles were going south on the north-and-south street, and after passing the center of that street a few feet she halted, waiting for a chance to cross over to the west side. One of the automobiles suddenly moved towards where she was standing, and she thereupon stepped backward towards the east, and while thus attempting to avoid this automobile she was run over by defendant's truck, driven by his servant, who approached from the south at a speed of eight miles an hour. When struck she was a foot and a half or two feet west of the center of the north-and-south street. The street car had proceeded north, and there was no vehicle or other obstruction to prevent the driver from driving the truck "as near as possible" to the east or right-hand curb. He made no effort to stop before the collision, there was nothing to obstruct his view, and the street to the right of the truck was vacant and there was ample room there for his truck to pass. The ordinance required that "a vehicle, except when passing a vehicle ahead, shall keep as near the right-hand curb as possible." *Held*, that the proximate cause of her death was not her stepping back after having passed in front of the truck, but the failure of the driver to keep as near the right-hand curb as possible, and his further violation of the ordinance by being west of the center of the street.

2. ———: ———: **Right-Hand Ordinance: Applicable to Pedestrian.** The ordinance requiring a vehicle, except when passing a vehicle ahead, to "keep as near the right-hand curb as possible," was enacted for the benefit and protection of pedestrians, as well as for the benefit of persons traveling in vehicles. The owner of an automobile, driven by his servant, who in violation of the ordinance drives on the part of the street left of its center, and there injures a pedestrian who has just alighted from a street car at a busy public crossing and has passed from the right-hand side of the street to the left of its center in an effort to board another street car on the cross street, is liable for her damages.

3. ———: ———: ———: **Street-Car Tracks Near Curb.** The fact that street-car tracks are in the street near the curb is no excuse for the violation of the ordinance requiring a vehicle to "keep as near the curb as possible," where there is no street car on the track, and especially where the rails of the track are broad and flat and do not obstruct the driving of vehicles thereon. Street cars have no exclusive right to the use of a street, and the public has a right to drive upon the tracks in the absence of street cars.

4. ———: ———: ———: **Arbitrary Instruction: Omission of Practicable.** Where defendant's evidence shows that there was no

fact or circumstance that prevented the driver of the truck from driving on the right-hand side of the street as near the curb as possible, and that he violated the ordinance by driving on the part left of the center, an instruction which requires the driver to drive his "truck as near the right-hand curb as possible," instead of requiring the jury to find that he drove it as near the right-hand curb as was "reasonably or practically possible," in no wise prejudices the rights of defendant, and is at worst only harmless error.

5.  ———: Instruction on Damages: To Minors for Loss of Mother: General Language: Specific Limitation to Minority. An instruction telling the jury that if they find a verdict for the minor plaintiffs "you will assess their damages at such sum as will, in your judgment and opinion, fairly and justly compensate them for all necessary and pecuniary injury and losses, if any, directly and proximately resulting to them from the death of their mother," is not erroneous, in that it does not specifically limit the amount of the recovery to the pecuniary loss of the plaintiffs during their minority. The instruction limited the recovery to the necessary pecuniary loss of plaintiffs sustained by the death of their mother, and authorized nothing more, and if defendant desired the recovery limited to loss that would be sustained during their minority it was his duty to ask an instruction specifically so limiting their damages.

6.  ———: Excessive Verdict: Loss of Mother: Damages to Minors: $10,000. Two minors, a boy eleven and a girl thirteen, the boy not in good health, sued for damages caused by the loss of their mother, who was negligently run down by an automobile and killed. Their father had been dead two years, and their mother was thirty-five years of age, healthy, strong, able and willing to work to support herself and her children, and their sole support. She was employed in an open-air school, where she worked in the kitchen and dining room, receiving regularly $52 per month. She lived with the children in a little flat over a cigar store, went early of mornings to the school, where she received her breakfast, returning between three and four in the afternoon and devoting the rest of the day to her children, doing their washing and sewing and keeping them in school. Held, that it was not only the money she earned and spent for her children, but the home she furnished them, the mental and moral training she would as mother have bestowed upon them, that constitute their pecuniary loss, and especially of pecuniary value to the little unhealthy boy would have been her mother's care and service, and a verdict for ten thousand dollars was not excessive.

Smith v. Mederacke.

Appeal from St. Louis City Circuit Court.—*Hon. Franklin Miller*, Judge.

Affirmed.

*Charles A. Houts* and *Thomas J. Cole* for appellant.

(1)    The court erred in giving Instruction 1 on behalf of the plaintiffs.    This instruction told the jury that if they found defendant's chauffeur was not driving defendant's truck as close to the right-hand curb as possible, and they found that such failure was the proximate cause of the death of Mrs. Smith, the jury should return a verdict against defendant.    (a)    The question as to whether or not defendant's chauffeur was as close to the right-hand curb as possible should not have been submitted to the jury, for if he failed to drive as close to the right-hand curb as possible such failure certainly was not the proximate cause of Mrs. Smith's death.    Majors v. Ozark Power & Water Co., 222 S. W. 501; Switzer v. Baker, 160 N. W. 1372; Thompson on Negligence, sec. 58, pp. 61-62; Railroad Company v. Reeves, 77 U. S. (10 Wall.) 176; Daniels v. Ballantine, 23 Ohio St. 532; McClary v. Ry. Co., 3 Neb. 44.    (b)    The ordinance had no place in this case, as it was not designed by its makers to prevent pedestrians from being struck, but was intended to regulate traffic, by causing "vehicles to keep well to the right side of the street, so that other vehicles approaching from the rear will have room to pass without crossing to the left side."    The above being true, no instruction based on the ordinance should have been given.    Mansfield v. Wagner Elec. Mfg. Co., 242 S. W. 400; Glaser v. Rothchild, 221 Mo. 180; Rutledge v. Mo. Pac. Ry. Co., 110 Mo. 312.    (c)    Even if a proper instruction on the ordinance was applicable to the facts in the case, the instruction given was clearly improper, and such an instruction has never received the approval of this or any other court.    Waterbury v. Railroad, 207 Ill. App. 380; Western Union Tel. Co. v. Harris, 6 Ga. App. 263; Stack v. General

Baking Co., 223 S. W. 92; Bullis v. Ball, 98 Wash. 342, 167 Pac. 942; Berry on Automobiles, sec. 272. (2) Instruction 3 on the measure of damages is incomplete in that it does not direct that recovery should be only for the loss sustained during the minority of the children, nor does it give any directions as to what to consider in determining the loss to the children. Goss v. Mo. Pac. Ry. Co., 50 Mo. App. 614; Stoher v. Railroad, 91 Mo. 509; McPherson v. St. Louis Ry. Co., 97 Mo. 259; 2 Sedgwick on Damages (18 Ed.) sec. 577. We know it has been held that mere non-direction in the absence of a request is not reversible error, and this rule has been applied to the situation here. Morton v. Tel. Co., 217 S. W. 831. But we submit the first cases cited and the instruction itself show its incompleteness, it being given in such a state that, it amounted not only to non-direction, but to mis-direction. In any event it was one of the causes of the excessive verdict. (3) The verdict is clearly excessive, and the result of passion and prejudice on the part of the jury. William v. Kansas City, 177 S. W. 783; Nelson v. Ry. Co., 104 Mich. 582; Babaccio v. Ry. Co., 53 Atl. 505. (4) Plaintiffs did not state facts sufficient to constitute a cause of action under their specification of negligence with reference to the violation of the ordinance requiring a driver of a vehicle to keep "as near the right-hand curb as possible." In Stack v. Bakery Co., 223 S. W. 89, this court declared that the ordinance referred to would have to be held unconstitutional if taken literally. In order to avoid holding it unconstitutional, the court said: " 'Usually,' 'when practicable' or words of similar import must be understood as qualifying the language 'keep near the curb.' " Under the ordinance as construed by this court, it was not the duty of the defendant driver to keep his truck "as near the right-hand curb as possible." His only duty was to keep his truck as near the right-hand curb as reasonably possible. There is no allegation that he did not keep his truck as near the right-hand curb as was reasonably possible. Plaintiffs, in failing to allege a violation of the ordinance, failed to

state a cause of action with respect to such violation, and the submission of any such question to the jury was wholly erroneous. Matthieson v. Railroad, 219 Mo. 550; McIntosh v. Railroad, 103 Mo. 131; Barker v. Railroad, 91 Mo. 86.   (5)  Even if the driver of defendant's truck violated the ordinance in question, such violation was not the proximate cause of the injury.  There was no causal connection between the position of defendant's truck and Mrs. Smith who was killed.  All the testimony shows that she was not in the line of travel of the truck until she suddenly stepped backward into its path.  This she was caused to do through fright at the approach of an automobile coming in the opposite direction.  There is no dispute whatever as to this fact.  If defendant was liable at all, he was liable because the driver did not keep a vigilant watch and because he failed to stop the truck after discovering Mrs. Smith's peril.  The accident did not result from his being in a place where he had no business to be.  If he had been ten feet further to the west, or left hand side of the street, which would clearly have been the wrong side of the street for him to be on, he would have been violating the ordinance, but would not have hit Mrs. Smith.  This shows that the mere violation of the ordinance did not cause him to hit Mrs. Smith.

*Holland, Rutledge & Lashly* for respondents.

(1)  The traffic ordinance requiring the driver of appellant's truck to keep upon the right side of the street was properly submitted to the jury.  (a)  Whether the driver violated the traffic ordinance and, if so, whether such violation was the proximate cause of the collision, were questions for the jury to determine.  Baillargeon v. Myers, 180 Cal. 504, 182 Pac. 37; Stack v. General Baking Co., 223 S. W. 89.  (b)  An ordinance providing that "a vehicle, except when passing a vehicle ahead, shall keep as near the right-hand curb as possible" is a valid traffic regulation for the benefit of all persons lawfully using the streets.  Ward v. Ely-Walker D. G. Co., 248 Mo. 348;

Meenach v. Crawford, 187 S. W. 879; Hayes v. Railroad, 111 U. S. 241; Grouch v. Heffner, 184 Mo. App. 365. (c) The form of the instruction given in this case, in following the language of the ordinance, was proper. The time for the modification of an instruction which is in general terms is in the trial court, not in the Supreme Court. (2) If counsel for appellant thought the measure of damages instruction was incomplete, misleading, confusing or contained any language which might lead the jury astray, they should have asked the court to give such an instruction as they deemed proper, embodying their own ideas of the law relating to this subject. Having failed to do so, they are precluded from complaining of the one given in behalf of the respondents. Hoover v. Railway Co., 227 S. W. 77; Browning v. Railroad Co., 124 Mo. 71; Minter v. Bradstreet Co., 174 Mo. 492; Smith v. Fordyce, 190 Mo. 30; Waddell v. Railroad, 213 Mo. 18; Norris v. Railroad, 239 Mo. 717; King v. St. Louis, 250 Mo. 514; Powell v. Railroad, 255 Mo. 453; State ex rel. Rys. Co. v. Reynolds, 257 Mo. 38; Sang v. St. Louis, 262 Mo. 463; Winston v. Lusk, 186 Mo. App. 381; Carter v. Wabash, 193 Mo. App. 223. (3) The verdict was not excessive. The jury were not confined to any precise calculation as to the amount of the loss, but were entitled to consider the physical, mental and moral training of the children in estimating the pecuniary loss which they sustained through the death of their widowed mother. Gentry v. Railroad Co., 172 Mo. App. 652; Stoher v. Railway, 91 Mo. 507; Omaha Water Co. v. Schamel, 147 Fed. 502; Butte Elec. Ry. Co. v. Jones, 164 Fed. 308; Mo. Pac. Ry. Co. v. Baier, 37 Neb. 235; Tilley v. Hudson River Ry. Co., 29 N. Y. 252, 86 Am. Dec. 297. (4) The humanitarian doctrine stands unchallenged as a basis for recovery in this case. Upon the whole record it is apparent that the respondents ought to win and the judgment ought, therefore, to be affirmed. Shinn v. Railway Co., 248 Mo. 181; Peterson v. Transit Co., 199 Mo. 344; Schnepback v. Gas Co., 232 Mo. 611; Fox v. Winder, 127 Mo. 514; Noble v. Blount, 77 Mo. 239; Hoehl v. Railway Co., 119 Mo. 344;

McFarland v. Heim, 127 Mo. 335; Sherwood v. Railroad Co., 132 Mo. 346.

SMALL, C.—Suit for damages for the death of the mother of the plaintiffs, who were minors, by their next friend. The father of the plaintiffs died about two years before May 29, 1920, when their mother, Johanna Smith, was run over and killed at or near the intersection of Grand Avenue and Market Street in the city of St. Louis, by a truck owned by defendant, and operated by his chauffeur while engaged in said defendant's business.

The charges of negligence in the petition are, that the truck was operated at a negligent rate of speed, to-wit, fifteen miles an hour, negligently failing to keep a vigilant watch for persons upon said highway and crossing, negligently turning said truck upon said highway and crossing, negligently turning said truck upon the body of said deceased, negligently operating said truck in close proximity behind a street car going in the same direction, negligently failing to hold said truck motionless until said deceased could cross said street, negligently failing to stop or turn aside said truck after said chauffeur observed said deceased on the street in a position of danger or in the exercise of ordinary care would have observed her in time to have stopped or turned aside said truck, and negligently operating said truck in the middle and partially to the left of the middle of said street, instead of as near the right-hand curb of said Grand Avenue as possible, in violation of an ordinance of said city.

The answer, besides a general denial, pleaded contributory negligence on the part of the deceased in walking immediately in front of said truck without paying attention to where she was going. John Holland was a party to the petition, who, it was alleged, so negligently drove his automobile near the deceased as to force her to stand in an exposed position near the middle of the street, and before she was able to cross over the street and attain a place of safety, she was run over and killed by the truck of defendant Mederacke. A demurrer to the

302 Mo. Sup.—35.

evidence was sustained as to defendant Holland, presumably on the ground that it was not shown that he was the owner of said automobile which ran so near the deceased.

The evidence tended to show that the deceased, Johanna Smith, was the widow of John Smith, who died about two years before she was killed. That she, after her widowhood, was the sole support of her minor children, Frank Smith and Mabel Smith, the plaintiffs in this case, Frank being about nine years of age and Mabel eleven when their father died, and two years older when their mother was killed. At and before her death, the mother was employed in the Open Air School in St. Louis, where she worked in the kitchen and dining room. She lived with her children in a little flat on the second floor over a cigar store at 4049 North Broadway. She was thirty-five years old at the time of her death. She earned about two dollars a day, her last pay having been $52 for the month. She went to the school in the morning for breakfast, and was relieved between three and four in the afternoon, when she could go home and devote her time to her own household. She was always well and strong, and was a hard-working, industrious woman, and worked steadily and regularly. She did everything for her children, including their washing and sewing. At the time of her death Mabel had completed one and one-half years of high school work, and Frank was in the grade school, attending the Open Air School. His health at the time of the trial was not all right, but he had been discharged from the Open Air School.

On the afternoon of May 29, 1920, in returning from the Open Air School in the direction of her home, she boarded a Grand Avenue car and traveled north to Market Street, the nearest transfer point, to continue her journey homeward. The cars ran north on Grand Avenue. There was a viaduct on Grand Avenue, just south of its intersection with Market Street, over the railroad yards. The tracks of the street railroad, instead of be-

ing located in the center of this viaduct, as they were at other places in the street, were located next to the sidewalks on each side of the bridge and about four feet from the curbs on the bridge, the distance between the two tracks on the bridge and approach being seventeen feet and eight inches. But the tracks converged after leaving the bridge and approach, so as to again run near the center of the street. The accident happened at the regular crossing over Grand Avenue on the north approach of the viaduct, where the street cars usually stopped to receive and discharge passengers for Market Street. At this point, the street-car tracks had not yet converged to the center of Grand Avenue, but were still about four feet from the curb. At this crossing, the street was thirty-six feet and five inches wide from curb to curb. The rails of the street-car tracks were flat and mortised into the roadway, so as to afford but little obstruction for the use of the track and the space occupied by them next to the curb by other vehicles, when not used by the street cars. The crossing was a busy crossing. When the Grand Avenue car stopped the deceased with a number of other persons alighted. She got off at the front end of the car and walked around in front of the car to go west towards the usual stopping place for passengers on the west side of Grand Avenue, who desired to take the east-bound cars on Market Street. There were a number of automobiles going south on the west side of Grand Avenue at the time, and she halted after passing the center of the street a few feet, waiting for a chance to cross over to the west side. One of said automobiles apparently suddenly moved towards where she was standing, which caused her to step back towards the east. While she was thus avoiding this automobile she was run over by the driver of the truck of the defendant, Mederacke, who approached from the south. The plaintiffs' evidence tended to show, that she was a foot and a half or two feet west of the center of Grand Avenue, when she was run over by the left front wheel of said truck, and that said truck had been driven

from the south over the viaduct and was going north. It was going about eight miles an hour, when it killed the deceased. Shortly after the deceased alighted from the street car before the collision, the street car had proceeded on its journey north, and there were no vehicles or other obstructions to prevent the driver of the truck from driving "as near as possible" to the east or right-hand curb of Grand Avenue instead of where he was driving near the center and partly west of the center of said street, where he struck and killed the deceased.

Plaintiffs' evidence also tended to show that the driver made no effort to stop the truck before the collision; that there was nothing to obstruct his vision; that the street to the right of the truck was vacant or empty, so that the driver of the truck could have turned; that the truck could have been stopped in five feet; that before the accident, the street car had pulled away and the track was empty; that there was no automobile occupying the street car track on the east side of the street; that the driver did not blow a horn or shout any warning to the deceased.

The chauffeur, Michael E. Ehrenreich, testified for defendant: The accident occurred between 2:30 and three o'clock. He was traveling across the Grand Avenue Bridge at about six or eight miles an hour, and as he approached Market Street "there were machines going north and south, and there were machines cut me off from the back and cut me off to my right—and turning to my left and turning to my right again, when I came near to it, I seen the lady stepping out—kind of on the side, tried to get maybe out of somebody's machine's (way) that came south, and as soon as I seen it, she was about maybe between six and eight feet when I noticed her. She first stepped back, when I really had seen her. All I did was to put the emergency brake on, stepped on the foot-brake and turned the truck with my left hand, and the fender struck the lady and knocked her down, and the front wheel went over her." When his truck stopped, it was only about two inches from

the body of a street car that afterwards came upon the track on the east side. When the lady stepped in front of the truck, the truck was only five or six feet away. After he tried to stop the truck and turned the wheel to the right it ran two or three yards. When he was driving towards Market Street he was looking straight ahead, and as he was crossing the bridge, and just before he reached Market Street, a car came from behind and cut in front of him. There was nothing he could have done that he did not do to stop the truck. The left front wheel entirely passed over her body. Cross-examination: He was an experienced driver. He made many trips over Grand Avenue and Market Street, and had always found it a busy corner. The cars were constantly stopping there and discharging passengers, and the passengers were constantly crossing the street. He was familiar with that prior to the accident. He saw no street car going north until after the accident, when the street car came up. When he first saw Mrs. Smith, it looked like she was in the middle of the street. She was not in the street-car track. There were other people walking in the street. He first saw Mrs. Smith just as she was stepping back. It appeared to him, that Mrs. Smith was facing northwest, and just at that instant he struck her. She was not more than six feet away when he first saw her, and might have been less than six feet. He had not seen her standing there before she took the step. He saw the machines coming south "driving pretty fast." They were in close proximity to each other. He knew that these people who were crossing would have to stop, and knew that if a machine came close to a woman who had stopped she would have to draw back. That is the way he would do—he would step back, he would do the same thing Mrs. Smith did. He said he did not have time to blow his horn. He only saw her take one step back. The automobile which passed him on the bridge was twenty or thirty yards back from the scene of the accident. That he struck Mrs. Smith ten to twelve feet

south of the regular cross-walk, and east of the center of Grand Avenue. At the time he approached the scene of the accident, there was no machine to his right. There was a street car there. "Q. Mr. Ehrenreich, at the time you drove up and saw Mrs. Smith step back into the path of your machine, was there any machine to the right of you? A. Not that I know of. Q. Was there anything between your machine and the right-hand curb? A. Not that I know of."

The plaintiffs introduced in evidence the "Right-hand Curb Ordinance" of said city, which provided as follows: "A vehicle, except when passing a vehicle ahead, shall keep as near the right-hand curb as possible."

Mrs. Smith never regained consciousness after the accident, and died as soon as she reached the hospital.

Among other instructions, the court gave the following for the plaintiff:

"1. The court instructs the jury, that if you believe and find from the evidence in this case that on or about the 29th day of May, 1920, Mrs. Johanna Smith, now deceased, was the natural mother of Frank Smith and Mabel Smith, and that said Frank Smith and Mabel Smith were at said time minor children of the ages of eleven years and thirteen years respectively, and that the father of said children and husband of said Johanna Smith was prior to said date deceased, leaving said Johanna Smith a widow, and that said Johanna Smith was upon and prior to said date employed for wages and was supporting and maintaining her said minor children by her earnings, and that said Johanna Smith was on or about said 29th day of May, 1920, a passenger upon a north-bound Grand Avenue car approaching the intersection of Grand Avenue with Market Street and that both of said streets were open public streets in the city of St. Louis, Missouri, at the time; and if you further believe and find from the evidence that the street car upon which said Johanna Smith was a passenger stopped on the south side of Market Street for the purpose of

allowing passengers to dismount at said intersection, and that said Johanna Smith alighted therefrom at said place, and that after alighting she undertook to cross by walking from the east side to the west side of said Grand Avenue, and that while she was upon the street in the act of crossing she was run upon and struck by the automobile truck of defendant Richard Mederacke and was thereupon knocked to the street and killed; and if you further believe and find from the evidence that said truck was at the time being operated and driven by a chauffeur for and in the employ of defendant Richard Mederacke, and that such chauffeur was operating said truck in the scope of his said employment at the time; and if your further believe and find from the evidence that at the time of and immediately preceding the collision between said truck and the deceased Johanna Smith, if you so find, the said truck was being operated northwardly over said Grand Avenue near the center thereof, and that said truck was not being kept by the driver thereof as near the right hand curb on said Grand Avenue as possible, and that it was not then in the act of passing a vehicle ahead, then, in that event, if you so find, the failure, if any, of said driver to operate said truck as near the right-hand curb as possible under those circumstances, if you so find, was a violation of the ordinance of the city of St. Louis, Missouri, read in evidence; and if you further believe and find from the evidence that the collision between the said truck and said Johanna Smith, deceased, was directly and proximately caused by such violation of said ordinance, if any, and that said Johanna Smith was at all said times exercising ordinary care for her own safety; then, and in that event, if you so find and believe, the plaintiff is entitled to recover in this case, and you will find your verdict in favor of the plaintiff and against defendant Richard Mederacke.

"3.  The court instructs the jury that if, under the evidence and the other instructions in this case, you should find your verdict in favor of the plaintiffs, you will assess their damages at such sum as will, in your

judgment and opinion, fairly and justly compensate them for all necessary and pecuniary injury and losses, if any, directly and proximately resulting to them from the death of their said mother, Johanna Smith; the whole amount of your verdict, however, should not in any event exceed the sum of ten thousand dollars.''

Other instructions were given for the plaintiff and also for the defendant, but no error is assigned as to any other instruction, given or refused, except as to those above set forth.

The jury returned a verdict for the plaintiffs in the sum of $10,000, on which judgment was entered against said defendant Mederacke, from which he duly appealed to this court.

I. It is said that the proximate cause of the death of Mrs. Smith was not the negligence, if any, of the driver of the truck in running her down, but it was the

Proximate
Cause.

act of Mrs. Smith herself in stepping back in front of his truck after having once passed in front of him. In support of this contention, Switzer v. Baker, 160 N. W. l. c. 375, is cited. In that case, the driver of the automobile was not driving on the wrong side of the street, nor into a crowded crossing, and had no reason to expect the pedestrian to turn back after having once passed in front of him. Here the street and crossing were crowded with pedestrians and automobiles and the defendant's chauffeur was on the wrong side of the street, and due care required him to anticipate that there would be more or less irregular movements in both pedestrians and vehicles to avoid running over or being run over by others. Furthermore, in this case, others were impeding the progress of the deceased in endeavoring to cross the street, and defendant's servant injured her while in a place she had a right to be and where he had no right to be. We rule this point against the appellant.

II. It is also objected, that the ''Right-hand Curb Ordinance,'' introduced in evidence, has no application

Smith v. Mederacke.

to pedestrians in the street, and was not passed for their **Right-Hand Ordinance.** benefit, but only for the benefit of persons in vehicles traveling upon the street. Stack v. Baking Co., 223 S. W. 89, a decision by Division Two of this court, is cited in support of this contention. In that case, whether said ordinance was also intended for the protection of pedestrians on the street was not before the court. The collision there in question was between an automobile and a baker's wagon. It is true, the court says in that case, at page 94: "The intention of the requirement was to cause vehicles to keep well to the right side of the street so that other vehicles approaching from the rear would have room to pass without crossing over to the left side." But nothing was said in the opinion to the effect that it was not intended for the protection of pedestrians upon or crossing the street. This court will take judicial notice of the fact that the tracks of street railways are generally located in the center of the streets of St. Louis and all other cities of the State; that such cars stop at crossings on the street for the purpose of taking on and letting off passengers who must cross to and from the sidewalk to the center of the street across the line of vehicle travel. If vehicles always travel along the right-hand curb as near as possible, they will interfere with and endanger passengers getting on and off the street cars, especially getting off the street cars, and passing to the sidewalks, much less than if they travel promiscuously on or near the center or on any side of the street. In this case, it is clear enough, that the chauffeur of the defendant could have easily obeyed this ordinance and driven near the curb on the right-hand side of the street, although occupied by the tracks of the street cars, because there was no street car or any other kind of a vehicle on such tracks which prevented him from so doing. In our judgment, said ordinance was passed for the benefit of pedestrians, so that they would know where to watch out for vehicles, as well as for drivers and persons traveling in vehicles upon the street.

The suggestion that the ordinance did not apply to the part of the street where the injury happened, because the street-car tracks were next to the curb on each side and the driver would have been required to drive "off and on again" to avoid street cars, is not tenable. Street cars have no exclusive right to the use of the street and the public has a right to and does use and drive upon the tracks in the absence of the street cars, and in this case there was no street car on the tracks while defendant's chauffeur was crossing the bridge (which was the only place the tracks were on the sides of the street), and none came along until after the accident. The tracks on this bridge and approach were broad, and flat with the surface of the street, so that there would be little or no obstruction in driving other vehicles thereon. Indeed, the street car tracks were so constructed as to invite travel on the portion of the street occupied by such tracks.

We rule this point against the appellant.

III. It is also contended by learned counsel for appellant that plaintiffs' instruction numbered 1 is erroneous, because it required the chauffeur under said ordinance to operate "said truck as near the right hand curb as possible," unless at the time of the accident he was "in the act of passing a vehicle ahead;" that it was decided in said case of Stack v. General Baking Co., 223 S. W. 89, supra, that said ordinance could not be given a literal construction, and meant that vehicles must keep as near the right-hand curb as reasonably or practically possible, and that whether in a given case the driver did keep his vehicle as near the right-hand curb as practically or reasonably possible, under all the circumstances of the case, was a question for the jury. We think the decision referred to announced the proper rule for construing said ordinance. But, in this case, the defendant's evidence shows that there was not only no vehicle ahead of the defendant's chauffeur on the right-hand side of Grand Avenue going north, but, as he himself admitted and testified for defendant, there

*Instruction.*

were no circumstances whatever that prevented him from driving on the right-hand side of the street and as near the right-hand curb as possible, or practically possible. The only vehicle which the chauffeur pretends that crossed his path or in any way interfered with his driving was an automobile which cut across in front of him back on the bridge, twenty or thirty yards from the place where the accident happened. And it is not shown that this automobile in any way prevented him from driving on the street car track next to the curb even at the point where it crossed in front of him. It certainly did not afterwards, nor when he was near the place of the accident. In this case, the defendant's own evidence shows that said right-hand curb ordinance was violated and therefore the error if any in said instruction in omitting the word "reasonably" or "practically" before the word "possible" in said instruction, was harmless error. It in no way prejudiced the rights of the defendant.

We must rule this point against the appellant.

IV. Defendant's instruction numbered 3 is objected to on the ground that it is too general and does not limit the amount of the recovery to the pecuniary loss suffered by the plaintiffs during the period of their minority. The case of Goss v. Railroad, 50 Mo. App. 623, is cited in support of this proposition. In that case, the instruction was more general than in the case before us, in that the damages were not restricted to the financial loss of the plaintiff, as in this case, but the jury were told to allow the plaintiff such damages as the jury "may deem fair and just under the evidence in the case with reference to the necessary injury resulting to her from the death of her father." This case was afterwards overruled by the learned Court of Appeals in the case of Haymaker & Crookshanks v. Adams & Son, 61 Mo. App. 585, where the court, per Ellison J., says: "Defendants took exception to the giving of plaintiffs' first instruction, relating to the measure of damages. The objection urged is that it

*Damages During Minority: Specific Limitation.*

is too general in its terms, and thereby left the jury without a guide, or, more properly speaking, without a limit as to the causes of damage to be considered by them in estimating the amount. While the instruction is general, and while it in nowise particularizes as to the elements of damage to be considered, yet it is proper enough in what it states and directs. Being so, it devolved upon defendants to ask an instruction limiting what might possibly be its result with the jury. This is the rule as announced by the Supreme Court in the recent case of Browning v. Railroad, 124 Mo. 55. The cases of Schaub v. Railroad, 106 Mo. 93, and McGowan v. Ore Co., 109 Mo. 531, which were followed in the cases of Goss v. Railroad, 50 Mo. App. 623, and Carpenter v. McDavitt, 53 Mo. App. 404, under the ruling referred to, must be considered as overruled.'' The above pronouncement of Judge ELLISON is good law. The mere generality of an instruction on the measure of damages, if it is good as far as it goes, is not reversible error, but the remedy of the complaining party is to ask an instruction containing the proper express limitations or qualifications.

Whether these plaintiffs were entitled to recover for pecuniary loss sustained, after their majority, we need not determine in this case, because the defendant did not request any instruction so limiting the plaintiffs' damages. The instruction given in this case was limited to the necessary pecuniary damage the plaintiffs would sustain by the death of their mother. It did not authorize them to recover for any element of damage or time for which they were not entitled to recover damages, but it strictly limited their recovery to their legal loss, and if defendant desired their legal loss to be more definitely detailed to the jury, he should have requested more definite and detailed instructions on the measure of damages. We must rule this point against the appellant.

V. As to the amount of the verdict. The verdict was for ten thousand dollars for both the plaintiffs. Their mother was their sole support. Their father was dead,

Smith v. Mederacke.

**Excessive Verdict.** The boy was eleven and the girl thirteen. The mother was a young woman only thirty-five years of age—healthy and strong and able and willing to work to support herself and her children. She was then employed in the Open Air School at $52 per month, which she received regularly. But it was not only the money she earned and spent for her children, that was a pecuniary benefit to them, but the home she furnished to them, the mental and moral training and physical care she would, as a mother, bestow upon them, were also of pecuniary ·value to the plaintiffs. Especially valuable from a pecuniary standpoint were the mother's life and services to the boy who appears not to have been in good health. In view of the age and condition of the children, we do not think the sum awarded by the jury indicates that they did not fairly consider the law and the evidence in fixing the amount of the verdict. We cannot disturb it.

Finding no error in the record, the judgment below should be affirmed. It is so ordered. *Lindsay, C.,* concurs.

PER CURIAM:—The foregoing opinion of SMALL, C., in Division One, is adopted by Court en Banc. All concur, except *Woodson, C. J.,* and *Graves, J.,* who dissent.

---

Headnotes 1, 2 and 3:   Motor Vehicles: 1, 28 Cyc. 38; 2 and 3, 26 Cyc. 37. Headnote 4:   Appeal and Error, 4 C. J. sec. 3013.   Headnote 5:   Trial, 38 Cyc. 1693.   Headnote 6:   Death, 17 C. J. sec. 235.