247 S.W.2d 773 (1952)
FERDENTE
v.
ST. LOUIS PUBLIC SERVICE CO.
No. 42513.
Supreme Court of Missouri, Division No. 2.
April 14, 1952.
*774 Mattingly, Boas & Richards and Lloyd E. Boas, all of St. Louis, for appellant.
Albright & McKeown, St. Louis, for respondent.
BARRETT, Commissioner.
This is an appeal by the St. Louis Public Service Company from Sam Ferdente's judgment for $20,000 for personal injuries. It is first claimed that the trial court erred in overruling the company's motions for a directed verdict for the reasons that Sam's evidence shows, as a matter of law, that his injuries were brought about and caused by his own contributory negligence, that the evidence fails to prove any negligence on the part of the company which could have been the proximate cause of his injuries, and that all the evidence, in so far as the company is concerned, leaves the cause of his injury to speculation, conjecture, guesswork and surmise.
In general, the circumstances of Sam's injuries were these: The vehicular space of Delmar Boulevard, an east and west street, is fifty-seven feet six inches from curb to curb. From the north curb line to the westbound streetcar tracks there is a space of nineteen feet nine inches. The streetcar tracks, both the eastbound and the westbound tracks, are four feet ten inches wide and the space between the tracks is five feet four inches wide. The space between the eastbound tracks and the south curb line of Delmar is nineteen feet ten inches. The Tivoli Theatre, 6348-6350 Delmar, is on the south side of the street. On December 3, 1949, Sam and his girl friend, now his wife, Rosemary Lay, and Rosemary's mother and father were going to the Tivoli Theatre. It was about six-thirty and dark and some said that it was raining and some said that the rain had stopped. Rosemary's brother let all of them out of a car on the north side of the street, almost directly opposite the Tivoli Theatre, probably in front of 6317 Delmar. The four of them started across the street obliquely abreast, Sam to the right or west, then Rosemary and then the father and mother. When they were about two feet from the north curb line Sam looked to the east and saw vehicular traffic about 400 feet away. To the west they saw a bus stopped for a traffic light at Westgate. When they reached the center of the street, the five foot four inch space between the streetcar tracks, the father said, "Let's let the bus go by." Sam said that he stopped about six inches north of the north rail of the eastbound track, he was holding Rosemary's hand and she was back of him, just a little, about a half foot, and the mother was back of her a little and the father was back still farther from his wife. When the father spoke the bus was forty feet from them traveling at a speed of eight to ten miles an hour in the traffic lane south of the eastbound track. As the bus approached the Tivoli Theatre automobiles were double parked and the bus pulled over onto the eastbound track proceeding east. Sam said, "The left side of the bus seemed to be over the north rail of the eastbound streetcar tracks." He looked to the east and there was an automobile passing another, riding the north rail of the westbound tracks, about 120 feet away traveling at a speed of thirty-five to forty miles an hour. The automobile was bearing down on them Sam said, "right smack in the middle" of Delmar. Both the bus and the automobile *775 continued in their respective directions and it is certain that the automobile hit the father and mother and probably Rosemary and threw one or more of them into the bus. The father and mother were killed. The rear vision mirror on the bus was smashed flat and there was a small dent, near the ventilator, about eighteen inches back from the front of the bus. Sam was struck on the left side of the face and head and one of the disputed issues and questions is whether he was hit by the automobile or by the bus.
When Sam saw the automobile bearing down on them at a speed of thirty-five to forty miles an hour, 120 feet away, he said, "the best thing I could do was to turn to my left to grab my girl by the arm and I looked to the west and at the same time I seen this bus on top of me," five to eight feet away, continuing at an angle northeast at a speed of eight to ten miles an hour. He said that he veered to his left, bending over, and pivoted to his left, and as he did so Rosemary was knocked or pulled from his grasp to the west. At one point in his cross-examination he said that he did not know how close he was to the rail when he pivoted, it was a short pivot and he did not look. "Q. The chances are, unless you disagree with me, the chances are you stepped out into that rail? A. Yes, on to it or over it." The appellant seizes upon these circumstances and says, "From the above testimony it clearly appears that plaintiff was fully aware of the fact that a bus was approaching him from the west and that he deliberately pivoted around across the north rail of the eastbound track in front of the bus when it was 5 to 8 feet from him," with the automobile then 120 feet away, and, therefore, he was guilty of contributory negligence as a matter of law. In support of its position the appellant relies upon the instances of a pedestrian's failure to again look after first seeing a vehicle 100 or 200 feet away. Epstein v. Kansas City Public Service Co., Mo. App., 78 S.W.2d 534; Thomas v. Wells, Mo.App., 299 S.W. 72. Or upon the instance of a pedestrian's stepping back upon a track to avoid an automobile when he had not looked in the direction from which the automobile approached. Thomas v. Wells, Mo.App., 299 S.W. 72, 73. In the latter case the court said, "He was confronted with the very situation which every pedestrian upon the streets of our large cities is forced to meet many times every day, and the conclusion to our minds is inescapable that, in failing to look towards the west, plaintiff failed to exercise the degree of care for his own safety required by the dictates of common prudence, thus rendering him guilty, as a matter of law, of negligence directly contributing to his injury." But in this case when the plaintiff started across the street it was apparently safe to do so, the bus was then stopped half a block away to the west and the traffic to the east was 400 feet away. When he stopped for the bus to pass the bus was traveling in the southernmost traffic lane but about forty feet away the bus passed "double" parked cars and drove onto the eastbound tracks, in a northeasterly direction at an undiminished speed. But the essence of the appellant's argument, the precise point upon which the appellant seizes as demonstrating contributory negligence, is that Sam pivoted to the left and over the north rail of the eastbound track. The difficulty with this argument is that it assumes that Sam was previously in a place of safety and that he was in no danger until he pivoted. But, as we have previously noted, Sam said that he stopped within six inches of the north rail of the eastbound track and when the bus was forty feet away, "The left side of the bus seemed to be over the north rail of the eastbound streetcar tracks," he did not know just how much. The point is that, according to him, he was in the path of the bus, in danger of being struck by it if the bus proceeded on its course, even when the bus was forty feet away. He looked and saw the bus forty feet away. When he pivoted it was but five to eight feet away. The pivot may have put him onto the track and farther into the path of the bus but by his evidence he was already in the path of the bus. But aside from this fact and aside from any sudden emergency that may have developed it will more clearly appear from the appellant's other contentions that Sam was not guilty *776 of contributory negligence as a matter of law.
The defendant's liability and the plaintiff's right to recover was submitted upon the sole assignment of negligence of "failing to keep a proper lookout." The company's argument that there is no proof of any negligence, in this particular respect, which could have been the proximate cause of plaintiff's injuries, and that the evidence, as a whole, in Sam's behalf leaves the cause of his injuries to guesswork, surmise and speculation is based upon the assumption that when Sam stopped six inches north of the north rail of the eastbound track that he was in a position of safety and came into the path of the bus when he pivoted. It is also based upon the claim that the "evidence shows with considerable certainty that he was struck with an automobile and knocked into the side of defendant's bus." But, in addition to the evidence previously noted which, at least for the distance of forty feet, placed Sam in the path of the bus, Sam positively testified that he was struck by the bus; once he said that the last thing he remembered was being struck by the bus. He said that he was struck by the left front part of the bus. Immediately prior to being struck by the bus he looked up and the operator was looking straight south. Upon the conclusion of his cross-examination he stated that he did not say that he was not struck by the automobile at all, "I said if it did strike me it was after the bus knocked me in its path," that was what he thought happened. In first describing the incidents and details of the occurence, all of which necessarily happened dramatically and in a very short space of time, he had said, "As I grabbed her, when I seen this bus coming at me, I seemed to freeze, I didn't know what to do, the next thing I know I blacked out, when the bus was coming at me." After that he said that he was struck by the bus, that was the last thing he remembered, and still later he said, when he was hit by the bus, "I was knocked a way, that is all I remember, I blacked out." It is in this connection that the appellant makes the subsidiary argument that the plaintiff is bound by his testimony which constitutes admissions against interest, "judicial admissions which he cannot deny." It is contended that Sam's own testimony conclusively shows that he blacked out prior to the time he was struck and, therefore, he did not and could not know what occurred thereafter, hence there is no proof of the fact. In support of its position the company invokes and seeks to apply the frequently cited rules employed in Steele v. Kansas City Southern Ry. Co., 265 Mo. 97, 175 S. W. 177 and Partney v. Agers, 238 Mo.App. 764, 187 S.W.2d 743. But in this case, as will clearly appear, the plaintiff has not testified to a fact which precludes his recovery as a matter of law; it does not appear that he has in fact testified contradictorily, so as to be conclusively bound by his statements in this regard. Upon the point precisely urged, that Sam is conclusively bound by his testimony, the applicable rules are as stated in Reeves v. Thompson, 357 Mo. 847, 854-855, 211 S.W.2d 23, 27; Hamilton v. Patton Creamery Co., 359 Mo. 526, 222 S. W.2d 713 and Dodd v. Missouri-Kansas-Texas R. Co., 353 Mo. 799, 802, 184 S.W. 2d 454. But, whether Sam was first struck by the bus or by the automobile is not necessarily the crux of this case. As we have said, according to his evidence, he was in the path of the bus when the bus was forty feet away to the west and at the same time the oncoming automobile was 120 feet away to the east, traveling down the middle of the street at a speed of thirty-five to forty miles an hour, and we are primarily concerned here with whether there was any evidence that failure on the part of the bus operator to keep a lookout was the proximate cause of Sam's injuries. It may be interpolated here that the record shows that Barrett K. Mitchell, the driver of the automobile, was inexcusably negligent, but that fact does not in and of itself necessarily absolve the appellant of liability.
Traveling east, fifty to sixty feet to the rear of the bus and a little to the north of the bus, was a Kaiser automobile driven by Alfred B. C. Dexter. His wife was sitting in the front seat with him, his daughter, daughter-in-law, and son were in the back seat, the son sitting in the middle. The son, Atlee B. C. Dexter, testified for the plaintiff and it is urged that the plaintiff is *777 conclusively bound by his testimony which shows that the automobile struck the group of people in the street, the appellant argues all four of them, and that the bus did not hit Sam, at least until after he was struck by the automobile. With reference to the actual collision or accident, as it was called by the examiner, it was his impression that the bus "was either just past it or just about to pass it, somewhere in there." The first thing he heard was a noise, he looked up and there were a "number of people somewhere in the center of the street." He thought they had stepped out from behind a bus; he said, "I don't know if that was true at all, and they were hit by an automobile which I could see very plainly, they were hit by this automobile and were thrown, as I thought, into the side of this bus, three of them at least." He could not place the number exactly, he was certain he "could see there were more than two any way." He did not know for certain that any of them were hit by the bus, but he insistently refused to say that all four of the people in the street were hit by the automobile. Mr. Dexter, his wife, his daughter and his daughter-in-law testified for the defendant, but three of them did not see the people struck at all, they only saw Mrs. Lay up in the air as high as the bus. Mr. Dexter could not say that any of the bodies were hit by the bus, but, as we understand, he did not see anyone struck at all. In these circumstances the plaintiff is not so conclusively or adversely bound by the testimony of one witness as to an essential issue that he is not entitled to recover in this action. Goslin v. Kurn, 351 Mo. 395, 173 S.W.2d 79; Draper v. Louisville & N. R. Co., 348 Mo. 886, 156 S.W.2d 626.
The operator of the bus, Marvin E. Atkins, was called as a witness by the plaintiff. He said that he had stopped at a traffic light at Westgate, when the light changed he proceeded east in the southernmost traffic lane, the one nearest the curb, at a speed of eight to ten miles an hour. He said he went about a half a block or a quarter, about 100 feet, there was an automobile stopped in front of the Tivoli Theatre, "double" parked perhaps, and near the box office he veered around the parked automobile onto the streetcar tracks, at an angle in a slightly northeasterly direction with his left wheels just south of the north rail of the eastbound track. As he veered onto the tracks his lights flashed upon a group of people standing in the westbound tracks. The people were then about twelve feet from his bus in a group and he proceeded on at a speed of seven to eight miles an hour. At the same moment he saw the automobile coming from the opposite direction, approximately 120 feet away, he continued watching it and it was bearing down on the people in the street. He had gone five or six feet when he glanced at the people again and at the approaching automobile. He had honked his horn when he was twelve feet away, and said that they were looking at him. The last time he saw the people he was two feet away from them, at which time he looked straight ahead and so he did not see the automobile hit the people. He did feel a body hitting the bus, it smashed in his rear vision mirror. He testified, under the conditions, that he could stop his bus in "approximately thirty feet." He testified that after he left Westgate there was nothing to obscure his vision to the east. His bus was in good mechanical condition and his lights were on. "Q. How far could you see? A. Probably a hundred and fifty feet."
Epitomizing, we have this factual situation: Four people in the middle of Delmar, three of them between the two sets of tracks and one of them, Sam, within six inches of the north rail of the eastbound track (the overhang of the bus was one and one half inches) and, according to him, within the path of the bus when it was forty feet away because he said it was traveling with its left wheels over the north rail. The speed of the bus was eight to ten miles an hour and that speed was but slightly diminshed, if any, the entire distance. When the bus was forty feet away the automobile, so Sam says, was 120 feet away bearing down upon them at thirty-five to forty miles an hour traveling in the middle of the street. The bus driver could stop in a maximum distance of thirty feet. He did not see the people in the street when he was forty feet away, he did *778 not see them until he was but twelve feet from them, even though he could see, and there was nothing to obscure his vision, a distance of 150 feet. From these circumstances, his ability to stop within forty feet, his ability to see 150 feet, his proceeding on at an undiminished speed, his failure to see the people until he was within twelve feet of them, whether the bus operator's failure to keep a lookout was the proximate cause of Sam's injuries, Sam's contributory negligence, and the appellant's ultimate liability were certainly all questions for the jury's determination and not to be declared as a matter of law. Lanio v. Kansas City Pub. Service Co., Mo.Sup., 162 S.W. 2d 862; Schinogle v. Baughman, Mo.App., 228 S.W. 897; Billingsley v. Kansas City Pub. Service Co., 239 Mo.App. 440, 191 S.W.2d 331; Gillis v. Singer, Mo.App., 86 S.W.2d 352; Hornbuckle v. McCarty, 295 Mo. 162, 243 S.W. 327, 25 A.L.R. 1508. The bus operator was not only bound to keep a lookout ahead and laterally, he was bound to maintain an observant, intelligent lookout and to act as the exigencies of the situation demanded. Brown v. Toedebusch Transfer, Inc., 354 Mo. 611, 613, 190 S.W. 2d 239; Kaley v. Huntley, 333 Mo. 771, 777, 63 S.W.2d 21. Here it does not clearly and conclusively appear that some independent, intervening cause, such as an automobile's skidding on the ice, was the sole and proximate cause of the accident, and the issue here, unlike in the Brown case, was failure of the bus operator to keep a lookout. Contrast Brown v. Toedebusch Transfer, Inc., supra; DeMoss v. Kansas City Rys. Co., 296 Mo. 526, 246 S.W. 566 and Smiley v. Kenney, Mo.App., 228 S.W. 857. If the bus operator had seen these four people in the street, particularly Sam, when the bus was 150, 100 or 75 feet away, as he said he could, and an oncoming automobile from the opposite direction bearing down upon them at a speed of thirty-five to forty miles an hour in the middle of the street, he was certainly under a duty to do something about it other than to proceed at virtually an undiminished speed, even of eight miles an hour. Smith v. Mederacke, 302 Mo. 538, 552, 259 S.W. 83; Jones v. Central States Oil Co., 350 Mo. 91, 102, 164 S.W.2d 914; Allen v. Kessler, Mo.Sup., 64 S.W.2d 630, 633.
Upon this complicated factual situation, with these several questions of law involved, the plaintiff cryptically and summarily submitted the defendant's liability and his right to recover by this single instruction:
"The Court instructs the jury that if you believe and find from the evidence that on December 3, 1949, plaintiff was on Delmar Boulevard, at the time and place mentioned in evidence, and at said time and place, plaintiff sustained injuries, if any, by the negligence of the defendant, if any, in failing to use the highest degree of care in the operation of its motorbus mentioned in evidence, in the following particulars, to-wit:
"1. In negligently failing to keep a proper lookout for persons and vehicles at said place of collision.
"Then you will find the issues for the plaintiff, unless you find against the plaintiff on the issue of contributory negligence, as submitted in another instruction."
On behalf of the defendant there was an instruction on Sam's contributory negligence, there was an instruction on Mitchell's conduct and negligence as the sole cause of the collision, and there was an instruction on burden of proof as well as other cautionary instructions. In this situation it is of no help to read all the instructions together, on this important issue there was not so much as a simple converse instruction on behalf of the defendant. The instructions on behalf of the defendant in no way supplemented, explained or delimited this principal instruction. The complicated factual situation is entirely ignored, and proximate cause or causal connection, is omitted from the instruction. In some simple factual situations so cryptic an abstraction might suffice, but in the circumstances of this complicated factual situation and its multifarious issues "negligently failing to keep a proper lookout for persons and vehicles at said place of collision" is for all practical purposes no instruction *779 at all; it certainly is not a factual hypothesization of the facts and circumstances relied upon as constituting and demonstrating negligence and liability. The instruction was prejudicially erroneous. Lanio v. Kansas City Public Service Co., Mo.Sup., 162 S.W.2d, loc. cit. 865-866; Yates v. Manchester, 358 Mo. 894, 217 S.W.2d 541; Dahlen v. Wright, Mo. Sup., 235 S.W.2d 366. It is unnecessary to consider whether other instructions are erroneous or whether the verdict is excessive, because of the error in the giving of instruction one the judgment is reversed and the cause remanded.
WESTHUES and BOHLING, CC., concur.
PER CURIAM.
The foregoing opinion by BARRETT, C., is adopted as the opinion of the Court.
All concur.