ELIZABETH MEYER v. PEVELY DAIRY COMPANY, a Corporation, Appellant.—64 S. W. (2d) 696.

Division One, October 19, 1933.

1110

Wilbur C. Schwartz and J. Edward Gragg for appellant.

*Eagleton, Henwood & Waechter* and *Frank P. Aschemeyer* for respondent.

FERGUSON, C.—Action for damages by a widow under the wrongful death statutes (Secs. 3262, 3263 and 3264, R. S. 1929) on account of the death of her husband alleged to have been caused by the negligent acts of defendants. Plaintiff's husband, Matthew O'Malley, a pedestrian while crossing Grand Boulevard in the city of St. Louis near the plant of defendant Pevely Dairy Company, was struck and killed by an automobile owned and being driven by defendant William J. Doran. The petition charges negligence against the Pevely Dairy Company in that (1) said defendant "negligently, carelessly and unlawfully drove" one of its wagons from a driveway, leading from its premises, into Grand Boulevard, "which was a legally designated boulevard there, without bringing the aforesaid vehicle to a full and complete stop before entering or crossing said boulevard, in violation of" an ordinance of the city of St. Louis, referred to by number, section and paragraph, and which provides in substance that every vehicle shall be brought to a full and complete stop before entering or crossing any street lawfully designated as a boulevard" and (2) that "defendant Pevely Dairy Company, in driving said wagon into said Grand Boulevard, failed to stop the same before entering said boulevard, and did continue to drive the same into said boulevard in such close proximity to the automobile of defendant Doran as to cause him to swerve said automobile in such manner as to strike and injure and kill plaintiff's husband." Other charges of negligence made against the dairy company were abandoned. The jury found for defendant Doran and for plaintiff as against defendant Pevely Dairy Company assessing damages in the amount of $10,000; from the judgment entered thereon against it the dairy company appeals.

The unfortunate event which resulted in O'Malley's death occurred about two-thirty A. M., November 4, 1927. The situation and preliminary facts may be briefly sketched. O'Malley was employed by the defendant dairy company as a driver of one of its horse-drawn delivery wagons and assigned to a certain regular route in the city of St. Louis. The dairy company plant, out of which O'Malley worked, was located at the southwest corner of the intersection of Choteau Avenue, an east and west street, and Grand Boulevard, a north and south street, the property extending some distance south along and adjacent to the west side of Grand Boulevard. The dairy company maintained a driveway upon and at the south side of its premises which led out from its yard and loading docks and extended to and connected with the west side of Grand Boulevard. It seems that daily, at about this hour, a large number of delivery wagons were loaded at the loading docks and dispatched to their respective routes. As the wagons were loaded and dispatched they left defendant company's premises over this driveway, into Grand Boulevard. On this morning O'Malley's wagon, having been

loaded, was left standing on defendant's premises while he, with the announced intention of "getting something to eat and some cigarettes" before starting on his route, walked across Grand Boulevard to a restaurant on the east side of that street. He was returning from the restaurant, crossing Grand to the dairy company plant on the west side of that street when he was struck by the Doran automobile. We come now to a statement of the evidence most favorable to and tending to support and sustain plaintiff's theory as to the manner and cause of O'Malley's injury and death. Doran was driving his automoile south on Grand Boulevard traveling to the right of the center of that street at a speed of from twenty to twenty-five miles an hour. As the automobile neared the point where defendant company's driveway connected with and entered Grand Boulevard on the west side of that street one of the company's delivery wagons drawn by a horse, without making a stop at the entrance of the driveway into the boulevard and without signal or warning being given, came out of the driveway and continued straight ahead toward the east and center of the street and directly in the path, and in front, of the south bound automobile. Doran testified the horse came out of the driveway "on a run." To avoid the impending collision with the horse and wagon Doran swerved to the left (the east) and "just missed the horse and wagon" by "possibly a foot or something like that." This swerve turned the automobile to the east and slightly to the east or left of the center of the street and it was there and then that it struck O'Malley who was in the act of crossing from the east side of the street to the company plant on the west side. The front left side of the automobile struck O'Malley. Doran stated that "the first I saw of Mr. O'Malley he just popped up in front of me" and "I saw Mr. O'Malley about the time I hit him." Reiper, defendant's driver in charge of this wagon, testified that his wagon had been loaded at the loading dock about fifty feet west of the intersection of the driveway with Grand Boulevard; that he "had a piece of ice on the wagon" and as the wagon neared the intersection he moved the ice with his foot and the horse "got scared and started to run." The driver does not say that the horse was at any time out of control or that he tried to check the horse but rather seems to have given his attention to the ice and made no effort to stop the horse before proceeding into the boulevard or to check it upon entering that street or to turn south thereon but permitted the horse to continue past the intersection of the driveway with the boulevard toward the east and near to the center of the street; as indicating this we refer to Reiper's statement that, "I was trying to hold the ice with my foot and he (the horse) started going fast on me . . . as he (the horse) came out of the driveway" and "if there had been no ice involved I could have turned the horse to the south immediately without going over to the center of the street."

Reiper further stated that he did not make a stop before entering upon the boulevard from the driveway and that when he first saw the Doran automobile it was within fifteen or twenty feet of the wagon; that as Doran swerved the automobile to the left "I drew my horse back and swung him over to the right" and the automobile missed the horse "about a foot." It was admitted that Grand Boulevard was a public street, and at this point was a legally designated boulevard, of the city of St. Louis. Plaintiff introduced in evidence an ordinance of the city of St. Louis which requires that "every vehicle shall be brought to a full and complete stop before entering or crossing any street lawfully designated as a boulevard." Defendant's evidence was to the effect that none of its wagons drove out of the driveway at the time or immediately prior thereto; that Reiper's wagon was standing some distance back in the yard at the time O'Malley was struck and had not yet started to leave the yard; that no wagon drove in front of the Doran car but that Doran's automobile traveling at a speed of forty or forty-five miles an hour struck O'Malley as he was crossing the street and nothing intervened on the street to cause it to change its course. The conflict in the evidence was, of course, resolved by the verdict of the jury.

Four minor children born of the marriage between plaintiff and O'Malley survived. As stated O'Malley was killed November 4, 1927. On November 14, 1927, this suit was filed, the petition naming William J. Doran alone as defendant. On the 27th day of September, 1928, being more than six months after the death of her husband, but within one year thereafter, plaintiff filed an amended petition making the Pevely Dairy Company a defendant with said Doran and the cause proceeded to trial, upon that petition, against both defendants with the result as above noted. In September, 1929, plaintiff married William Meyer hence her name now appears herein as Elizabeth Meyer.

■ Appellant's first assignment of error is that the trial court should have given its instruction in the nature of a demurrer to the evidence. The principal argument advanced in support of this contention is that while the suit was originally brought by the widow against defendant Doran within six months after her husband's death it appears that the amended petition whereby the appellant company was joined as a party defendant was not filed "within six months after such death" and therefore the widow did not bring a suit against the appellant company within the six months' period and having failed so to do cannot maintain the action as against appellant, the cause of action, if any, against appellant having vested, after the lapse of six months, in the minor children of the deceased. Our statutes, Sections 3262, 3263 and 3264, Revised Statutes 1929, provide that a suit, such as this, for the death "of a person caused by a wrongful act, neglect or default of another"

(Sec. 3263) may be brought: "First, by the husband or wife of the deceased; or, second, if there be no husband or wife, or he or she fails to sue within six months after such death, then by the minor child or children of the deceased . . . (Secs. 3262 and 3264, supra), and Section 3266, Revised Statutes 1929, requires that such "action . . . be commenced within one year after the cause of action shall accrue." For a period of one year after the cause of action accrued an action could be brought against all persons whose negligent or wrongful acts caused or contributed to cause, the death of plaintiff's husband. Regardless, however, of the number of wrong-doers there was but "one, single, indivisible cause of action," "a single, indivisible right to sue all the guilty parties." [Packard v. Hannibal & St. Joseph Railroad Company, 181 Mo. 421, 80 S. W. 951.] The statute provides for but one cause of action and the widow is granted a preferential right to sue "conditioned that . . . she 'sue within six months after such death' " (Huss v. Bohrer, 317 Mo. 204, 295 S. W. 95), therefore she had six months "within which to elect to appropriate the cause of action, the election to be made by the institution of a suit." [McNamara v. Slavens, 76 Mo. 329.] When she made such election, and exercised her preferential right to sue by instituting the suit against one of the alleged wrongdoers, Doran, within six months after the death of her husband she thereby appropriated and the single, indivisible, cause of action became fully vested in her so that she thereupon and thereafter had "absolute control" of· the action (Huss v. Bohrer, McNamara v. Slavens, and Packard v. Railroad, supra), and the right, at her election, to charge and join any other alleged wrongdoers as parties defendants by filing an amended petition within the period of one year prescribed as a limitation of the action. "Having appropriated the right, she had absolute control of it. Her right of action was against all whose negligence caused the death of her husband. Having plenary control of the action, she was at liberty to sue them all jointly, or as many as she saw fit." [Packard. v. Railroad, supra.]

The statement we have made of the evidence supporting plaintiff's version of how O'Malley was struck and killed by the Doran automobile with our accompanying comment suffices, we think, to dispose of appellant's assertion that the evidence "did not show that defendant Pevely Dairy Company was guilty of any negligence" alleged in the petition and upon that ground its demurrer to the evidence should have been sustained. It seems to have been conceded that the ordinance requiring that "every vehicle . . . be brought to a full and complete stop before entering or crossing any street lawfully designated as a boulevard"·applied to the situation there existing, Grand Boulevard being a legally designated boulevard, therefore the violation of the ordinance by appellant's employee, as shown by plaintiff's evidence, in driving the wagon into Grand Boulevard

without bringing same to a stop before entering upon that street and in permitting it to continue across and toward the center of the street was negligence *per se* (Borack v. Mosler Safe Co., 288 Mo. 83, 231 S. W. 623), and since there was substantial evidence on the part of plaintiff tending to show that such violation of the ordinance proximately contributed to cause O'Malley's death the demurrer to the evidence was properly overruled.

Appellant's remaining assignment of error relates to plaintiff's Instruction 1, given by the court, as follows:

"The Court instructs the jury that if you find and believe from the evidence that on the occasion in question the defendant, Pevely Dairy Company, through its driver did drive the horse and wagon mentioned in the evidence out of its said driveway and into and upon Grand Boulevard mentioned therein, and that said driver on said occasion did fail to stop for said boulevard, and did thereafter, if you do so find, continue to drive said horse and wagon, without stopping, into and across said boulevard and into close proximity to the automobile of the defendant Doran, and that in thus driving said horse and wagon under said circumstances, if you so find, the said driver was then and there guilty of negligence, and that plaintiff's husband was injured and killed as a direct result of said negligence on the part of said driver, if you so find from the evidence, then the plaintiff is entitled to recover against the defendant, Pevely Dairy Company, and this is true even though you may find and believe from the evidence that the defendant, Doran, was also guilty of negligence which contributed to cause the death of the plaintiff's deceased husband."

Defendant dairy company's given instructions fully covered its theory of the case. Its Instruction 5 told the jury that the finding should be for it if the jury found that the wagon "was in no way involved in the accident" but was at the time "standing in the yard" as was the evidence on appellant's part; and its Instructions 6, 7 and 8 told the jury that if Doran negligently drove his automobile at a "high, excessive and unreasonable rate of speed under the circumstances;" failed to timely "sound a signal . . . and turn or swerve his said automobile when by the exercise of the highest degree of care he could have done so" or that he "failed to exercise the highest degree of care to slacken the speed of his automobile" and that said acts or omissions on the part of Doran "directly caused the collision" with plaintiff's husband, the verdict should be for defendant dairy company, "provided you further find that the driver of the wagon of the Pevely Dairy Company was not negligent in any manner in driving his said wagon."

Appellant's sole criticism of plaintiff's Instruction 1, is that it should but does not require a specific finding by the jury "that the alleged negligence of the defendant Pevely Dairy Company in driving

its wagon out into the street caused the defendant Doran to swerve his automobile in such manner as to strike and kill plaintiff's husband.'' The gist of the negligence charged against the dairy company and made the basis of plaintiff's action against that defendant is the driving of its wagon into Grand Boulevard without bringing it to a stop before entering upon that street and in continuing to drive same upon and across said street in close proximity to the approaching automobile and it is further alleged, and in that connection, that as a consequence and result of such negligence on part of defendant dairy company defendant Doran was caused to swerve his automobile ''in such manner as to strike and injure and kill plaintiff's husband.'' The evidence offered on the part of the plaintiff as tending to show liability of the dairy company was confined solely to the theory that the driver of its wagon negligently failed to make a stop for the boulevard and negligently drove the wagon out onto and across the boulevard in such a manner that to avoid a collision therewith it was necessary for Doran to swerve his automobile to the left. There was no evidence tending to show that acts of the dairy company contributed in any other manner or way to cause the injury. The instruction advised and required the jury to make their finding ''from the evidence'' and we must assume that in making their finding and arriving at the verdict against the dairy company the jury, under this instruction, found as the instruction required from the evidence, that the driver of the wagon failed ''to stop for said boulevard and did thereafter . . . . continue to drive said horse and wagon, without stopping, into and across said boulevard and into close proximity to the automobile of the defendant Doran and that in thus driving said horse and wagon under said circumstances . . . the driver was then and there guilty of negligence'' and ''*that plaintiff's husband was injured and killed as a direct result of said negligence;*'' that is, that the dairy company's acts in operating and driving its wagon in the manner alleged in the petition, shown by plaintiff's evidence and predicated in the instruction, made it necessary for Doran to swerve his automobile and thereby directly contributed, as plaintiff's evidence shows, to cause O'Malley's injury and death. The instruction properly requires the jury to find, first, that the dairy company was guilty of the negligence charged, and, second; that the injury sustained proximately resulted from such negligence and from the evidence there was but one way in which the jury could find that such negligence caused the injury that being to find that on account thereof Doran was caused to swerve his automobile, in the manner in which he did, in order to avoid a collision with the wagon. The instruction might well have been made more specific but in the light of plaintiff's evidence upon which it is predicated, the instructions given on behalf of defendant dairy company fully and most favorably submitting its theory

and the evidence as a whole, we think the issues were fairly and clearly submitted and that plaintiff's Instruction 1, cannot be said to have likely, in any way, misled the jury or have been prejudicial to appellant.

Finding no reversible error the judgment of the circuit court is affirmed. *Sturgis* and *Hyde, CC.,* concur.

PER CURIAM:—The foregoing opinion by FERGUSON, C., is adopted as the opinion of the court. All the judges concur.