259 S.W.2d 820 (1953)
STUTTE et al.
v.
BRODTRICK.
No. 43237.
Supreme Court of Missouri, Division No. 1.
July 13, 1953.
*822 Mark D. Eagleton, St. Louis, Rene J. Lusser, St. Louis, Charles R. Warner, St. Louis, for appellants, Chester Stutte and Marcella Stutte.
Moser, Marsalek, Carpenter, Cleary & Carter, F. X. Cleary, St. Louis, O. P. *823 Owen, St. Louis, for appellant William A. Brodtrick, administrator of the estate of Leonard Brodtrick, deceased.
Remmers & Remmers, Oliver T. Remmers, Douglas B. Remmers, St. Louis, for respondent William J. Krutsch.
HYDE, Presiding Judge.
Action for wrongful death of plaintiffs' son; verdict and judgment for $15,000 against both defendants. Motion for new trial of defendant Brodtrick was overruled; but motions of defendant Krutsch to set aside judgment against him and enter judgment in his favor and for a new trial were sustained. Defendant Brodtrick has appealed from the judgment entered against him. Plaintiffs have appealed from the judgment entered in favor of Krutsch and from the order granting him a new trial. Defendant Brodtrick attempted to also appeal from these orders but he is not aggrieved by them within the meaning of Section 512.020. (Statutory references are to RSMo and V.A.M.S.) See White v. Kuhnert, Mo.App., 207 S.W.2d 839; See also Barr v. Nafziger Baking Co., 328 Mo. 423, 41 S.W.2d 559, loc. cit. 563 and cases cited.
Plaintiffs' son, 13 years old, was killed in an automobile collision on Highway 66 in St. Louis County, July 2, 1950. He was riding in the front seat of Leonard Brodtrick's Pontiac. Brodtrick was driving and Hilda Sabourin sat between them. They were returning to St. Louis from a restaurant near the Meramec River, which they left about 4:30 a. m. Bob Hoeynck and Jean Lutz left ahead of them in Hoeynck's Buick. It was cloudy and dark but the pavement was dry. Highway 66 had four lanes from the St. Louis City limits to about two miles west of the place of the collision. It ran east and west and went on an overpass over Lindbergh Boulevard, nine-tenths of a mile west of the place of collision. At that place, it was posted for a speed limit of 35 miles per hour.
Hoeynck started first and, according to Miss Lutz, was driving between 60 and 65 miles per hour after crossing the Meramec. (She only looked at the speedometer once.) Brodtrick was gaining on them, flashing his spotlight across the highway. Plaintiffs' witness Henry C. Sissom said he was driving a tractor-trailer east at 60 to 65 miles per hour and that after he left Lindbergh Boulevard he saw a spotlight flash from the Pontiac and the two cars soon passed him. He was driving in the outside (south) lane, the Buick passed him in the inside lane, south of the center line, and the Pontiac in the inside lane, north of the center line, on the wrong side of the road for eastbound traffic. He said the two cars were practically side by side when they passed him and he estimated their speed at "right around ninety miles an hour; maybe a little better."
East of Lindbergh, defendant William Krutsch was delivering Sunday morning papers in a station wagon type of car. He made a delivery at the Haldiman residence on the south side of the highway and then drove on to the south lane. His next delivery was to be Dr. Duemler's, whose driveway was 680 feet east of the Haldiman driveway, on the north side of the highway. Krutsch could see 700 to 800 feet west to the top of the grade and there were no cars in sight when he drove on to the south lane. He moved over gradually and straightened out in the inside south lane as he reached the next driveway, 95 feet east of the Haldiman's. He got in this lane because he intended to make a left turn into Dr. Duemler's driveway. He said he drove 15, 20 or 25 miles per hour. After Krutsch straightened out in the inside lane, he saw two cars coming down the grade five or six hundred feet behind him, one moving a spotlight sideways. He kicked his stoplight a couple of times and kept moving ahead. The Buick swerved to the right and passed him on the outside (south) lane. The Pontiac skidded around him to the north and struck a westbound Chevrolet (driven by Joffre Thompson, a St. Louis Policeman) in the outside north lane. (Harold Thompson and George Morgan, nephews of Joffre Thompson were riding with him.) The Pontiac slid sideways into the front end of the Chevrolet and all three of the occupants of the Pontiac were killed. A State Highway Patrolman, J. B. Upton, found heavy skid marks from a point *824 222 feet west of where the cars were, after the collision. They started "approximately at the center line" of the highway, and went straight forward for about 142 feet and then went diagonally northeast for the last 80 feet. These diagonal skid marks were wider and indicated the car was skidding sideways. There were also tire marks 39 feet behind the Chevrolet. Thompson said he was driving from 40 to 45 miles per hour and required about 75 feet to stop. According to Miss Lutz, the speed of the Buick was not more than 60 to 65 miles per hour; Brodtrick had continued to gain on them, flashing his spotlight behind them. Hoeynck did not testify but he gave his speed as 60 to 65 miles per hour to Patrolman Upton at the scene of the casualty. There were also skid marks behind the Buick but Upton did not measure them.
The case was submitted against defendant Brodtrick on excessive speed and driving on to the north or left side of the highway. No complaint is made about these instructions and it is obvious that there was substantial evidence to support them. The case was submitted against defendant Krutsch for failure to operate his car as close to the right hand side of the highway as practicable. Defendant Brodtrick claims error in refusing to discharge the jury because of the following matters:
First: On direct examination of Patrolman Upton, called as a witness by plaintiffs, the following occurred:
"Q. Did you make any investigation, in and about the scene of the accident? A. I did.
"Q. Will you kindly tell the Court and jury, what, if anything, that disclosed? A. I found that a 1950 Pontiac sedan had been driving east on City 66, following a 1950 Buick, driven by a boy named Robert Hoeynckthose two cars bad been traveling east at an excessive rate of speed.
"Mr. Cleary: I object to that and ask it be stricken from the record and the jury instructed to disregard it.
"The Court: How do you determine they were traveling at an excessive rate of speed? A. The one boy admitted he was doing sixty-five, and the other boyhe said the other car was behind him and gaining on him and due to the skid marks of the boy who was driving the Buick, who stated that he was going sixty-five miles an hour, I determined they were traveling excessive.
"Mr. Cleary: I am objecting to that.
"The Court: It is a question for the jury as to the excessive rate of speed.
"Mr. Cleary: In view of the fact that the testimony has been adduced before the jury, I move for a discharge of this jury.
"The Court: Overruled."
Defendant relies on Hamre v. Conger, 357 Mo. 497, 209 S.W.2d 242 in claiming this was an improper and prejudicial conclusion as to excessive speed. It was held that the conclusion in that case (fixing the point of a collision from the location of debris) was not a proper subject of expert testimony. Determination of high speed from skid marks and the condition of the wrecked car, by one who has had training and experience in such matters, is at least a different proposition, although the term "excessive" should not have been used. However, the Court made it very clear that excessive rate of speed was a question for the jury and, in view of this statement, we do not see how this testimony could have materially affected the merits of the case. See Cornwell v. Highway Motor Freight Line, 348 Mo. 19, 152 S.W.2d 10. Moreover, only general objections were made which were insufficient to preserve any definite evidence point for review. Home Exchange Bank v. Koch, 326 Mo. 369, 32 S.W.2d 86, loc. cit. 90; Feltz v. Terminal Railroad Ass'n of St. Louis, 336 Mo. 790, 81 S.W.2d 616, loc. cit. 619; Galloway v. Galloway, Mo.Sup., 169 S.W.2d 883, loc. cit. 887. This assignment is overruled.
Second: On cross-examination of Upton, several requests for discharge of the jury were made because of claimed improper questions and statements by counsel for defendant Krutsch, as follows:
(a) When Upton said he talked to Krutsch, at the scene, he was asked: "Did you *825 also say to him, `you are not involved, go on.'" (The record does not show this question was answered.) Only a general objection was made and the Court instructed the jury to disregard the question and answer; and also said: "That is a question for the jury and the Court to determine as a matter of law." No further action was requested as to this matter.
(b) Krutsch's counsel questioned Upton to show his training and qualifications to testify concerning speed from stopping distances and asked him about a chart used by the Patrol. The Court did not permit testimony as to what the chart showed, saying the chart would be the best evidence, and also refused to admit the chart in evidence when objection was made on the ground that it was hearsay.
(c) Objection was made by plaintiffs' counsel to a hypothetical question asked Upton by Krutsch's counsel as to determining the speed of Brodtrick's car and his objection included another element suggested to be added to the question. Objection was made "because of prejudicial conversation here in the presence of the jury" (between the two lawyers). The Court instructed the jury to disregard any conversation between counsel and told them to be guided only by what they hear from the witness stand and the instructions given by the Court as to the law of the case.
(d) In arguing for the introduction of the chart, Krutsch's counsel said it was recognized as a standard chart by the National Safety Council, the A.A.A. and the Missouri Highway Patrol. The objection, although general, was sustained and on counsel's motion the jury was instructed to disregard this statement.
(e) Krutsch's counsel showed Upton the photographs of the wrecked Brodtrick car and said: "Wasn't much left of it, was there?" Upon objection that this was leading and intending to prejudice the jury, the Court said: "The pictures are in evidence; the jury can see the pictures. The remark may be stricken from the record; the jury is instructed to disregard that remark."
Declaring a mistrial for improper questions, remarks or conduct rests largely within the discretion of the trial court. Mooney v. Terminal R. Ass'n of St. Louis, 353 Mo. 1080, 186 S.W.2d 450 and authorities cited; See also Gettys v. American Car & Foundry Co., 322 Mo. 787, 16 S.W.2d 85; Higgins v. Terminal R. Ass'n, 362 Mo. 264, 241 S.W.2d 380. In view of the prompt, definite and decisive action of the trial court, we cannot find any abuse of discretion or say that its action was not adequate. In fact, we do not feel that these matters warranted the discharge of the jury and the declaration of a mistrial in view of the obvious negligence of Leonard Brodtrick. Therefore, these assignments are overruled.
Third: On cross-examination, Krutsch was asked by Brodtrick's counsel if he could not have turned over to the right hand shoulder lane when he saw the two cars coming. His counsel said: "Then he would have collided with the Buick." This was argumentative and improper but the Court sustained the motion to strike it from the record and instructed the jury to disregard it. A motion to discharge the jury was overruled. However, this matter is not mentioned in the motion for new trial and, therefore, is not preserved for appellate review under Section 512.160(1). Anyhow, in view of the Court's action, we do not think a discharge of the jury was required.
The Court, on May 5, 1952, made an order overruling the motion for new trial of defendant Brodtrick, sustaining the motion for new trial of defendant Krutsch on grounds 5, 6 and 8 (5 and 6 were refusing his motions for directed verdict; 8 was error in instruction 4) and also sustaining Krutsch's motion to set aside verdict and judgment and enter judgment in accordance with his motions for a directed verdict. On the next day, May 6th, that part of the order of May 5th sustaining Krutsch's motions was set aside and a new order entered setting aside the verdict and judgment against Krutsch and rendering judgment for him. This new order also sustained Krutsch's motion for a new trial "conditioned upon the reversal by an appellate court of the judgment" in his favor. This new order also stated new grounds for sustaining *826 his motion for new trial, namely: 3that the verdict was against the weight of the evidence and 7additional allegations of error in instruction 4. (The date of verdict and judgment was February 8, 1952.) It is contended by counsel for plaintiffs and Brodtrick that the order of May 6th was a nullity. It is argued that the Court exhausted its authority when it entered the order of May 5th and had no power to disturb it because more than 30 days had elapsed since the original judgment was entered. Section 510.370. It is also argued that, because the new trial was granted first in the order of May 5th, the Court was divested of further jurisdiction over the subject matter so that the portion of the order, setting aside the judgment against Krutsch and entering judgment in his favor was void. Citing Davis v. Lynn, 354 Mo. 1181, 193 S.W.2d 609 and Hurley v. Kennally, 186 Mo. 225, 85 S.W. 357.
Considering the last contention first, we find it without merit. The cases cited do not consider the situation herein involved. There was only one order of May 5th and it must be construed as a whole. (All after-trial motions are considered ruled as of the same date as the motion for new trial. Rule 3.24.) While the order of May 6th properly ruled the motion for new trial in the alternative, conditioned upon the reversal of the judgment entered on the other motion, Johnson v. Kansas City Public Service Co., 358 Mo. 253, 214 S.W. 2d 5, loc. cit. 8; Hughes v. St. Louis National League Baseball Club, 359 Mo. 993, 224 S.W.2d 989, loc. cit. 992, 16 A.L.R.2d 904, there could have been no other intention in making the order of May 5th and it should be so construed.
As to the first contention, Hynes v. Risch, Mo.App., 243 S.W.2d 116; Krummel v. Hintz, Mo.App., 222 S.W.2d 574 and Bank of Thayer v. Kuebler, 240 Mo.App. 776, 219 S.W.2d 297 are cited. However, these are all cases in which the motion for new trial was overruled, making the judgment final. In all of them also, 30 days from the date of entry of the judgment had elapsed; and the basis of these rulings was that the Court had no authority to disturb a judgment which had become final by overruling the motion for new trial more than 30 days after the entry of judgment. That is not the situation here. The judgment against Krutsch, instead of becoming final, was set aside by the Court's action on these motions. Therefore, we see no good reason why the Court could not amend its order at any time within the 90 days it had to act on the motions. Section 510.360. The power of the Court to set aside an order sustaining a motion for new trial, at a term subsequent to the judgment term to which the motion had been continued, was recognized under our old code. Boyer v. Missouri Pac. R. Co., Mo.Sup., 293 S.W. 386; Chandler v. Gloyd, 217 Mo. 394, 116 S.W. 1073; Blumenthal v. Kurth, 22 Mo. 173. In the Boyer case, 293 S.W. loc. cit. 387 we said: "The sustaining of the motion for a new trial did not exhaust the power of the court at such term; but, later, during that term, the court had power to reconsider and to set aside the order sustaining the motion, and to make its other orders upon the conditions mentioned, since all of the orders had direct relation to the question of excessiveness of the verdict, raised by the motion for a new trial, and the whole matter was in the breast of the court until the term expired." We hold this is true of matters raised in the motion for new trial during the period of 90 days after the motion is filed.
Nevertheless, as contended herein, we do not think such an order should be made without notice to the parties affected by it. Albert J. Hoppe, Inc., v. St. Louis Public Service Co., 361 Mo. 402, 235 S.W. 2d 347, 23 A.L.R.2d 846, is cited and while that case involved setting aside a judgment by the Court of its own initiative, within 30 days after entry of judgment, the same principles are involved. There, as here, the ground for granting the new trial was that the verdict was against the weight of the evidence. We said, 235 S.W.2d loc. cit. 350-351: "Opportunity for a litigant to present his views as to the matters instantly before the court which may affect his rights is the very foundation stone of our procedure. The requirement of notice can result in no hardship. Nor is it restrictive of *827 the trial court's freedom of action in the exercise of its judicial discretion. * * * If the trial court purposes to summarily set aside and vacate a judgment and order a new trial for a substantially unappealable reason the least the law can accord is reasonable notice and hearing." However, because we think the court acted properly on the motion to set aside the verdict and judgment against Krutsch, it is unnecessary to pass on the effect of its action on the motion for new trial without notice to the parties.
The evidence showed that Krutsch went into the south inside lane when he was about 580 feet west of Dr. Duemler's driveway. He had driven in that lane about 430 feet when the collision occurred and was still 150 feet from Dr. Duemler's driveway where he intended to make his left turn. His tail light was visible to Miss Lutz and she said she saw his car a block or a block and a half before Hoeynck swerved to the right. Harold Thompson saw Krutsch's car edge over from the outside lane to the center lane before he saw the headlights of the other cars. Joffre Thompson said he first saw the two cars approaching from the west "five or six or possible seven hundred feet back" of the Krutsch car. They were both witnesses called by plaintiffs; and their evidence corroborates Krutsch's testimony that the Buick and Pontiac were not in sight when he started out on the highway from Haldiman's. Section 304.020(2) provides: "All vehicles when in operation shall be kept as close to the right-hand side of the highway as practicable". It was the claimed violation of this section that was submitted as negligence against Krutsch. However, Section 304.020(10) provides: "An operator or driver intending to turn his vehicle to the left * * * shall slow down and approach the intersecting highway so that the left side of his vehicle shall be as near as practicable to the center line of the highway along which he is proceeding before turning". This is exactly what Krutsch was doing but it is contended that he was negligent in getting into the inside lane too soon, 580 feet from the driveway into which he intended to turn. However, at 20 miles per hour it would only have taken him 17 seconds to reach the place where he intended to turn and at 15 miles per hour it would have taken about 26 seconds. (Less than a half a minute in time and less than 200 yards in distance.) It would certainly not be the exercise of the highest degree of care to move to the center of the highway in the last few feet before reaching the place where the turn was to be made and we do not think that is what the statute intends. The position of a car moving slowly near the center of a highway in itself is an indication of an intention to make a left-hand turn and Harold Thompson said that purpose of Krutsch was very evident to him.
It is contended that Krutsch should have moved back into the outside lane when he saw the two cars coming behind him. However, the high speed of these two cars and the reckless conduct of their drivers made any movement by him dangerous and, in fact, it was dangerous for him to be on the highway at all under the circumstances, as also it was for Thompson. Certainly Thompson was driving properly where he had a right to be and we think Krutsch was also. All parts of Section 304.020 must be harmonized, and it is our view of the statute that, while reference is made therein to an intersecting highway, the rule stated also applies to a driveway or other place where it is proper to turn off the highway. (Section 304.020(7) refers to driving from private property or an alley.) This was not a limited access highway or a place where left turns were prohibited. Of course, it would be negligence to make a left turn anywhere in front of approaching traffic but Krutsch was not doing that, as he had not reached the place where he intended to turn. "Negligence which imposes liability must result from a faulty or defective foresight. (Not hindsight.) * * * On what should have been anticipated, rather than what happened." Hughes v. St. Louis National League Baseball Club, 359 Mo. 993, 224 S.W.2d 989, loc. cit. 995, 16 A.L.R.2d 904, and cases cited. We do not think it is reasonable to say that Krutsch should have anticipated the kind of conduct the truck driver, Sissom, related he witnessed and which was indicated by *828 the marks and results found by Patrolman Upton. Our conclusion is that there is no substantial evidence of negligence of Krutsch. Plaintiffs rely on Melber v. Yourtee, Mo.Sup., 203 S.W.2d 727; Kenney v. Hoerr, 324 Mo. 368, 23 S.W.2d 96; Frees v. Hosack, Mo.App., 119 S.W.2d 460; Bennett v. Cauble, Mo.App., 167 S.W.2d 959; also cited are Yerger v. Smith, 338 Mo. 140, 89 S.W.2d 66; Meyer v. Pevely Dairy Co., 333 Mo. 1109, 64 S.W.2d 696; Heibel v. Ahrens, Mo.Sup., 55 S.W.2d 473; Burris v. Kansas City Public Service Co., Mo.App., 226 S.W.2d 743; Breitschaft v. Wyatt, Mo. App., 167 S.W.2d 931. All of these cases may be distinguished on their facts.
The judgment against defendant William A. Brodtrick, Administrator, is affirmed and the judgment in favor of defendant William J. Krutsch, entered on his motion to set aside the verdict and judgment against him and enter judgment in his favor, is also affirmed.
All concur.