MICHAEL L. KENNEY, Appellant, v. WILLIAM HOERR.—23 S. W. (2d) 96.

Division One, December 30, 1929.

*W. D. O'Connor* and *Foristel, Mudd, Blair & Habenicht* for appellant.

370

*Roessel & Minton* for respondent.

ELLISON, C.—By this action the plaintiff sues for $25,000 damages for personal injuries sustained in being run down by the defendant's automobile in the city of St. Louis. Denied a recovery by the verdict of a jury he appeals from the judgment thereon.

The appellant met with his injury while attempting to cross Lucas Avenue from south to north along the west side of Fourth Street—that is to say, the accident occurred near the southwest corner of the street intersection. The respondent was driving his automobile north along Fourth Street and turned westward into Lucas Avenue, cutting the corner close to the southwest curb.

The evidence for appellant was that the respondent approached the Lucas Avenue crossing driving on the left side of Fourth Street at a speed of from twelve to twenty-five miles per hour, without giving any signal by horn or otherwise and with his attention apparently directed to a building on the left. When he reached the intersection, instead of passing to the right of the center thereof, he veered sharply to the left and rounded the corner on a course four to six feet from the curb.

At this juncture the appellant was just leaving the sidewalk after having paused momentarily to look for approaching vehicles. Neither seeing nor hearing the respondent's automobile, he had taken two or three steps into Lucas Avenue when the car struck him and knocked him down upon the cobble-stone pavement. When the automobile stopped it was within a few feet of the south curb of the avenue, headed west, the rear end not yet clear of what may be termed the cross-walk portion of the intersection. The appellant was lying under the car and lengthwise of it, with his head between the front wheels. He sustained a broken ankle and other injuries.

The petition charged negligence violative of a city ordinance, a state statute, and the common law as to speed of the automobile, in the failure to give warning of its approach, in the improper operation and control of the same, in the failure to drive it as close to the right-hand curb as practicable, and in the failure to turn beyond the center of the street intersection. The answer consisted of a general denial, a plea of contributory negligence, and a plea that by a certain ordinance of the city of St. Louis Lucas Avenue had been duly made a one-way thoroughfare for westbound traffic only, and that such traffic was thereby authorized in such movement to use the whole width of said avenue. No reply was filed.

In putting the case to the jury the trial court refused two instructions offered by the appellant, which appear in the record as instructions "C" and "D" and gave, among others, at the instance of the respondent an instruction designated as "No. 6." It is upon these rulings alone that the appellant assigns error.

I. Appellant's refused Instruction C authorized a verdict if the jury should conclude from certain stated facts found that the collision was due to the failure of the defendant "to drive his automobile as close to the right-hand curb of Lucas Avenue as was reasonably practicable at that time and place." The duty thus imposed on respondent by the instruction arose, according to appellant's argument, out of the requirements of paragraph (b) of Section 21, Laws 1921 (1st Ex. Sess.), pages 76, 93, which provides that "all vehicles when in operation shall be kept as close to the right-hand side of the highway as practicable."

We think the instruction was properly refused. At least in situations such as we have in this case, the quoted statute applies only to vehicles traveling longitudinally along the highway and not to those in the act of turning at intersections. As to the latter, paragraph (f) of the same Section 21 provides:

"All vehicles approaching an intersection on a highway, with the intention of turning thereat, shall in turning to the right keep

to the right of the center of such intersection, and in turning to the left, shall run beyond the center of such intersection, passing to the right thereof, before turning such vehicle toward the left.''

This paragraph makes no requirement with reference to keeping near the right curb or side of the street and only enjoins that the vehicle pass to the right of the center of the intersection. Some of the evidence was that the automobile struck the appellant while *making* the turn. Other witnesses said the machine had completed the turn and straightened out headed west. With the latter hypothesis omitted from the instruction (as it was) and inasmuch as the gravamen of the charge was cutting the corner, we think paragraph (f) and not paragraph (b) of Section 21 of the automobile law applied. Of course the two paragraphs are to be construed together and harmonized as far as may be; and it is true that vehicles making a right turn ordinarily could both hug the right curb and pass to the right of the center of the intersection. But vehicles making a left turn would approach the right curb on a curve from the opposise side of the street, and it can hardly be thought the intent of the act was to circumscribe their movements while making the turn, by requiring them to *keep* close to the right side, before they have taken up a course opposite and parallel to the curb on that side of the street.

II. Appellant's refused Instruction D, upon the refusal of which he predicates error, is as follows:

''The court instructs the jury that if they believe from the evidence that Fourth Street is a public street of the city of St. Louis running in a general north and south direction and that Lucas Avenue is a public street in the city of St. Louis running in a general east and west direction and intersecting Fourth Street, and that on or about the 31st day of May, 1923, plaintiff was crossing Lucas Avenue from the south curb to the north curb near the west line of Fourth Street, and that defendant was at the same time driving an automobile northwardly along Fourth Street and turned same into Lucas Avenue, and that said automobile collided with and struck plaintiff, and if you further believe from the evidence that the defendant, while turning said automobile to the left from Fourth Street into Lucas Avenue, failed to run beyond the center of the intersection of said streets so as to pass to the right thereof, before making such turn from Fourth Street to the left into Lucas Avenue, and that the collision, if any, between plaintiff and said automobile was directly due to such failure, if any, there was, on the part of the defendant, and that as a result of such collision, if any, plaintiff was thrown to the street and suffered injuries, then your verdict should be in favor of the plaintiff.''

This instruction is bottomed on paragraph (f) of Section 21 of the state automobile law as hereinbefore set out, the violation thereof being treated as negligence *per se*. [See Myers v. Nissenbaum (Mo. App.), 6 S. W. (2d) 993, 994; Smith v. Mederacke, 302 Mo. 538, 552-3, 259 S. W. 83, 86.] The respondent argues the instruction was properly refused for two reasons: (1) because, as pleaded in the answer, Lucas Avenue had been made a one-way, westbound street by ordinance, in view of which fact paragraph (f), aforesaid, became inapplicable to the situation and the respondent was entitled (indeed, required) to turn west with the current of traffic as soon as he came to it, without first passing to the right of the center of the intersection; (2) because appellant filed no reply, and failed affirmatively to plead by way of replication the invalidity of the traffic ordinance if it was in conflict with the state law and if the latter still required him to swing to the right clear around the center of the intersection notwithstanding the ordinance. We are unable to sustain these contentions.

It is true Section 24, paragraph (b), of the same law (Laws 1921, 1st Ex. Sess., pp. 76, 100), permits municipalities by ordinance to make *additional* rules of the road or traffic regulations to meet their needs, and to establish one-way streets and provide for the regulation of vehicles thereon. This being so, if an ordinance be enacted under sanction of the state law it will be valid as an additional regulation. On the other hand, if the ordinance make a requirement contrary to the state law with respect to a matter on which the state law is intended to be controlling, the ordinance cannot stand.

Respondent argues the provisions of Section 21 of the state law are not intended to be controlling with respect to one-way streets; that they are general and refer to two-way highways, where half the street is used by traffic going one direction and the other half by traffic moving the opposite way. It is said the object of Paragraph (f) of Section 21 in requiring vehicles to pass to the right of the center of an intersection in making a turn, is to accommodate traffic to this dual use of the street.

From this it is argued Paragraph (f) of Section 21 of the state law does not stand in the way of a municipal regulation permitting the cutting of corners in making a left turn onto a one-way thoroughfare, and it is further contended the establishment of one-way streets necessarily calls for short turns of that character, for the reason that the whole width of the street is used by traffic going in the same direction, and it is better for vehicles entering from a side street to join with the current of traffic as soon as they get to it. To require them to pass to the right of the center of the intersection in making a left turn would uselessly require them to cross, and thereby impede, the flow of travel for at least half the width of the street.

There may be some logical force to this contention. In this case, however, the objections urged are not so applicable because the St. Louis traffic ordinance in question only made Lucas Avenue a one-way thoroughfare from Fourth Street *west*. Therefore, in passing to the right of the center of the intersection at Fourth Street and Lucas Avenue, vehicles approaching from the south would not encounter traffic coming from the east on the south side of Lucas Avenue. Furthermore, the intersection area is common to both streets. Vehicles and pedestrians travelling on the cross streets have some rights in the matter. The municipal legislative body might think it unwise to force pedestrians to "run the gantlet" clear across the one-way street—or they might have, at least, under the facts here; or it might be thought advantageous to have uniformity and system in directing the course of traffic, for vehicles and pedestrians alike.

Appellant cites 2 Blashfield, Cyclopedia of Auto. Law, section 14, page 1180, which says the violation of an ordinance requiring vehicles to keep near the right-hand curb so as to leave the center of the street open for overtaking traffic, is not negligence *per se* as to a pedestrian struck at a street intersection, because such an ordinance is not made for the benefit of pedestrians. The same, it is insisted, is true of the state law under consideration now. But that is not the view taken by this court. [Smith v. Mederacke, supra, decided in banc, 302 Mo. l. c. 552-3, 259 S. W. l. c. 86.] Without going into the matter further, and without speculating as to the objects and purposes underlying the passage of the St. Louis traffic ordinance involved, we rule that the mere designation of Lucas Avenue as a one-way street, did not, of itself, sanction a deviation from the requirements of Section 21, paragraph (f), of the state automobile law requiring vehicles making a left turn to pass to the right of the center of the intersection.

Section 24, paragraph (b), of the state law not only permitted the municipality to establish one-way streets, but also allowed it to "prohibit or control left-hand turns of vehicles." There is nothing in the traffic ordinance under consideration making any provision about left-hand turns. We will not go so far as to say the last-mentioned provision of the state law would not be a sufficient basis for the passage of a city ordinance allowing or requiring the cutting of corners in making left-hand turns onto one-way streets, because such an ordinance would be in conflict with Paragraph (f) of Section 21 (as appellant contends in his brief). It is unnecessary to decide that question. But we do say the ordinance depended on in this case neither expressly nor by necessary implication did sanction the practice, and inasmuch as the record shows no municipal regulation on the matter, the require-

ments of Paragraph (f) of Section 21 of the state law were clearly controlling, and the refusal of the instruction was error.

III. With regard to the giving of respondent's instruction numbered 6. This instruction told the jury "before plaintiff is entitled to recover, it must appear to your reasonable satisfaction that on the occasion in question he was exercising ordinary care for his own safety." The instruction continued by saying if the jury believed from the evidence the plaintiff failed to exercise ordinary care in looking and listening for the approach of the defendant's automobile, and thereby was negligent, and that such negligence contributed to cause his injuries, he was not entitled to recover and the verdict should be for the defendant. Following that, respondent's Instruction 8 told the jury "the burden of proof is on the plaintiff to establish by a preponderance of evidence the facts necessary to a verdict in his favor under these instructions, except upon the issue concerning the exercise of ordinary care by plaintiff. As to that issue, the burden of proof is on defendant" etc.

We think these instructions taken together were misleading and were calculated to give the jury the impression that the burden of proof was on the plaintiff to disprove his own contributory negligence. It is true Instruction 8 contains an exception as to that issue, but on the other hand Instruction 6 says before the plaintiff can recover it must appear he was exercising ordinary care for his own safety, and Instruction 8 says the burden of proof is on the plaintiff to establish the facts necessary to a verdict in his favor. These instructions can be recast if and when the case is tried again.

For the reasons assigned the judgment is reversed and the cause remanded. *Lindsay* and *Seddon, CC.,* concur.

PER CURIAM:—The foregoing opinion by ELLISON, C., is adopted as the opinion of the court. All of the judges concur.