**Dorothy MOORE, Respondent,**

v.

**Emil C. EDEN, Appellant.**

**No. 51632.**

Supreme Court of Missouri,
Division No. 1.

Sept. 12, 1966.

Pickett, Andereck & Hauck, by Marvin L. Sharp, Eugene E. Andereck, Trenton, for plaintiff-respondent.

Strop, Watkins, Roberts & Hale, by O. W. Watkins, Jr., St. Joseph, for defendant-appellant.

JAMES W. BROADDUS, Special Commissioner.

This is an action for damages for personal injuries. Plaintiff recovered a verdict and judgment in the sum of $18,000. Defendant has appealed.

Inasmuch as the only questions presented on this appeal are whether or not the Court should have directed a verdict for defendant at the close of the evidence, and whether Instruction No. 2 given on behalf of plaintiff, was supported by the evidence, we will set forth only the testimony bearing on these issues.

The action arose out of an automobile collision occurring on May 26, 1963. Plaintiff was riding in a Ford Station Wagon which her husband was driving. Plaintiff and her family were going to St. Joseph for a picnic intending to go on from there to pick up their daughter at Atchison, Kansas. The plaintiff's vehicle was traveling in a westerly direction on Highway 36, which is also known as Frederick Avenue. The accident occurred in the westbound lane at the entrance to Memorial Park Cemetery. Defendant was eastbound on the highway on his way to the cemetery. He had been driving in the south lane as he approached the cemetery and, as he told the police officer after the accident, he was going out Frederick and saw the plaintiff's car back at the top of the hill past the cemetery and thought he had plenty of time to make his turn. He turned into the cemetery and was hit. The actual point of collision was 70 feet inside the city limits of St. Joseph and was three or four feet south of the north line of the pavement in the westbound traffic lane.

Otto Clayton, a police officer in St. Joseph, investigated the accident. He testified that the highway where the accident occurred is a three-lane highway. To the east of the entrance of Memorial Park Cemetery, there is a slight downgrade of two or three percent. The highway is straight and concrete. The highway is 29½ feet wide. Officer Clayton arrived at the scene after the accident happened. The debris on the highway was four feet south of the entrance to Memorial Park pretty close to the west edge of the entrance to Memorial Park nad was 70 feet west of the city limits. He saw two skid marks 78' 7" long, one of which was on the north shoulder of the drive of the Memorial Park entrance, and the other one was on the highway. These skid marks were in the westbound lane going west. The highway was dry. At this location there are lane lines marking the three lanes. There is a yellow line in the lane farthest south. The yellow line starts west of the entrance to the cemetery and runs east past the cemetery driveway. The cemetery driveway entrance is 39 feet wide. The Moore vehicle was 57 feet west of the debris which he previously described and the skid marks ran up to the Moore (plaintiff) vehicle and were fresh. Most of the damage to the car in which plaintiff was riding was on the left side. Most of the damage to defendant's car was on the right side. On cross-examination the officer testified that the collision occurred 70 feet inside the city limits of St. Joseph and that the black skid marks made by the Moore car started even ahead of the city limits sign. Defendant's automobile was located 15 feet back from the point of debris.

Plaintiff's daughter, Glenda Kay, age 20, a passenger in her vehicle, testified "we were going west, coming towards St. Joseph and coming toward the Memorial Park Cemetery, and as we came up by the filling station, we saw the Eden (defendant) car in the middle lane when we realized he was going to make his turn then * * * when we realized he was going to turn, I remember my dad putting on the brakes and swerving to the right going up on the shoulder to avoid the accident."

Plaintiff's husband testified that he and his wife, together with the other passengers in the car, were going down for a picnic and to pick up their daughter at Atchison, Kansas. He was driving. At this point, the neighborhood is semi-residential. The highway is three lanes wide. Just before the entrance to the cemetery there is a slight rise. At the top of the hill he noticed an automobile ahead headed in his direction to which he paid very little attention until it moved over into the center lane, at which time he became alarmed and started slowing down. The Moore (plaintiff) vehicle was then in the north lane going west, and the defendant's vehicle was in the center lane going east. The highway was dry and it was about 11:15 to 11:30 a. m. There was no other traffic on the highway and there were no visual obstructions. When he saw defendant starting to make a left turn, which would be to the north, he swerved to the north shoulder and put on his brakes. The left front fender and left portion of his hood struck the right fender and the right portion of the hood of defendant's vehicle. The point of impact was three to four feet from the north edge of the pavement, and in the entrance to the cemetery. The automobile he was driving was owned jointly by himself and his wife. The automobile was in excellent shape, had brand new tires on it, and the brakes were in excellent condition. He admitted in his deposition that when he was somewhere opposite the east drive of the filling station he knew that defendant was turning across the northernmost lane of the highway into

the cemetery and that he would have to stop to avoid the accident. At the trial he testified that when his brakes took hold he thought he was opposite the west drive.

On cross-examination he was asked: "And how fast were you traveling, Mr. Moore, as you came into this area? A. I would say some—some place in the neighborhood of fifty-five. Q. Were you traveling more than fifty-five? A. I don't think so, no. Q. Were you traveling less than fifty-five? A. I really don't know. I was in that range." After the collision he released his brakes and rolled up on the shoulder and traveled 57 feet farther before he stopped. When he first saw the defendant's automobile it was in the extreme right lane and he saw it move into the middle lane where it "actually shouldn't be * * * so I was more or less alarmed at it." He did not notice a left-turn signal on the Eden automobile. The Eden automobile was traveling between 20 and 30 miles per hour. The Eden car was turning into the cemetery a car's length or two before it got to the cemetery drive. Mr. Moore said he "had the impulse to let up on the accelerator" before he got to the western drive of the filling station. "I was sort of letting up on it because I was easing into the city limits there."

Plaintiff testified that she was riding in the front seat on the car with her husband from their home in Trenton to St. Joseph. As they approached the east city limits of St. Joseph their car was in the north lane. She never realized that anyone was going to pull out in front of them across the highway and she wasn't paying much attention as to what kind of turn or what the Eden car was going to do. She didn't see the Eden car in any lane other than the middle one. She saw him start to turn into the cemetery which would be to the north or to Eden's left.

The defendant called as a witness Roderick E. Riddle, Jr., a civil engineer. He testified that he had prepared a plat which was stipulated by counsel to be an accurate

plat of the area. The filling station driveways are shown on the plat and it is 155 feet from the eastern edge of the west drive of the service station to the west edge of the cemetery entrance driveway. The west edge of the east filling station driveway is 215 feet, or 60 feet farther from the cemetery entrance. The east driveway in the filling station is 175 feet and it is a total of 400 feet from the eastern edge of the filling station entrance to the east edge of the cemetery entrance. Starting at a point 200 feet east of the cemetery entrance the highway is downgrade at 1.3%, that is, it drops 1.3 feet to the 100-feet horizon tally. The shoulders at the scene of the accident were approximately 15 feet in width.

Defendant himself testified that on the date of the accident, about 11:30 a. m., he was going to Memorial Park Cemetery in his station wagon. He approached the cemetery driving in the south lane of the three-lane highway at about 30 miles per hour. As he approached the cemetery entrance he turned on his left-turn signal. When he reached the entrance, he slowed down to 12 or 15 miles per hour. The only car approaching was clear up on top of the hill so that he had plenty of time to make the turn. He had gotten into the center lane and just made a normal turn into the cemetery. When he got into the north lane, the right front end of his car was hit and his car was knocked backwards across the highway. He estimated the speed of the Moore vehicle at 70 or 75 miles per hour. His station wagon was in excellent condition and the windshield was clean. As he pulled into the middle lane to turn into the cemetery he crossed the yellow line, which was in the south lane. He was 40 or 50 feet from the cemetery entrance when he pulled over the yellow line into the middle lane. After he got in the middle lane and was going about 15 miles per hour, he started to make a left turn to the north. At this time the Moore vehicle was clear up on top of the hill coming west in the north lane. He was making his turn and thought he had plenty of time. He didn't continue watching the Moore car because he thought he had time and his intention was to go up the drive into the cemetery. He could have seen the Moore car, had he looked again. At the time of the impact the Moore car was partially on the north shoulder. He only had a glance at the Moore vehicle up at the top of the hill and before he made his turn.

Defendant offered in evidence an Ordinance of the City of St. Joseph which provides that the speed limit on Frederick Avenue from the east line of Noyes Boulevard to the east city limits is 35 miles per hour.

Defendant contends that the trial court erred in failing to sustain his motion for a directed verdict for the reason that plaintiff's husband was guilty of negligence as a matter of law in violating the Ordinance; that his negligence in exceeding the speed limit was a direct and proximate cause of the accident. Preliminary to this contention defendant's brief states: "Plaintiff was riding in a car owned jointly by herself and her husband while they were engaged in a joint enterprise"; that under these facts if plaintiff's husband was negligent his negligence was imputed to her. This, plaintiff's brief does not dispute.

In passing upon the contention we must adhere to the settled rule that the evidence must be considered in the light most favorable to the plaintiff and the defendant's evidence must be disregarded except insofar as it may tend to aid plaintiff's case.

"[T]he granting of a motion for directed verdict is a drastic action by a trial court, and that it should be done only when all of the evidence and the reasonable inferences to be drawn therefrom are *so strongly against plaintiff that there is no room for reasonable minds to differ.*" (Italics added.) Justice v. East St. Louis City Lines, Inc., Mo.Sup., 375 S.W.2d 150, 155.

Defendant argues in his brief a mathematical formula which would require us to judicially notice that plaintiff's automobile

would have stopped "two feet" prior to the collision if it had been traveling 35 miles per hour after entering the city limits. Inherent in that argument is the requirement that we judicially notice that plaintiff's tires were "sliding on dry concrete"; and that defendant was traveling 12 miles per hour or 17.6 feet per second at right angles with plaintiff's line of traffic.

■ Also in his argument defendant asserts that plaintiff's husband admitted that he was traveling "about 55 miles per hour" as he entered the city limits. This plaintiff says is an "unwarranted assumption." As we have stated, plaintiff's husband was asked this question: "And how fast were you traveling, Mr. Moore, as you came into *this area?* A. I would say some place in the neighborhood of fifty-five." Defendant put into evidence a plat of "this area" prepared by Mr. Riddle, the civil engineer. The *area* as shown on the plat extends to the eastern edge of the filling station's east driveway, a distance of 330 feet from the city limits. We do not think that it should be said that Mr. Moore's answer to the inquiry concerning the speed at which he was traveling when he *"came into this area"* must be taken as an admission that he was going that fast as he *entered the city limits.* Especially is this true when we consider other portions of his testimony. He stated that at a point near the filling station he was letting up on his accelerator and "easing" into the city limits. He also said that as he "topped the hill" east of the city limits he noticed defendant's car "move over into the center lane, at which time I was obviously alarmed and I started slowing up"; and that his brakes began to take hold somewhere "in the breadth" of the west driveway of the filling station.

■ The tires on plaintiff's vehicle were "not sliding on dry concrete" as defendant assumes in his argument. All of the evidence is to the contrary. Witness Glenda Kay Moore testified: "When we realized he was going to turn, I remember my dad putting on the brakes and swerving into the right going up on the shoulder to avoid the accident." Mr. Clayton, the police officer, testified: "Q. How many skid marks were there? A. There was two. Q. Where were they? A. One was up on the shoulder and the drive of Memorial Park entrance, and the other was on the highway." Plaintiff's husband testified that he left the highway and went onto the north shoulder five feet west of the city limits sign. The shoulder was dirt and sod.

■ Nor can we take judicial notice that defendant was traveling at 12 miles per hour or 17.6 feet per second at right angles with plaintiff's line of traffic into the cemetery as defendant assumes. The plaintiff's evidence was that defendant was "going slow, and almost stopped", "looked like he was looking over at the cemetery." Plaintiff's husband testified that defendant was headed "slightly northeast" at the time of the impact. Defendant testified that he was 35 or 40 feet from the cemetery drive when he started to make his left turn from the center lane into the north lane. On another occasion defendant testified that he was a car length or more from the entrance to the cemetery when he started out of the middle lane into the north lane. The jury could fairly infer from the testimony that from a car length to 40 feet west of the cemetery drive the defendant was "going slow" or "almost stopped" in the north lane of traffic, with his vehicle headed "slightly northeast," "looking over at the cemetery." In view of this evidence we cannot judicially notice that defendant was traveling at 12 miles per hour or 17.6 feet per second, as defendant's mathematical argument seeks to compel us to do.

■ This court has said many times that, except within certain limits, it cannot take judicial notice of the exact distance within which a certain automobile may be stopped under given conditions. Mallow v. Tucker, Mo.Sup., 281 S.W.2d 848, 851;

Nelms v. Bright, Mo.Sup., 299 S.W.2d 483, 490. In order to uphold defendant's contention we would have to say that it is common knowledge that a heavy automobile traveling 78 feet downgrade, sliding with two wheels on the concrete and two wheels on the dirt and sod, gave such conclusive evidence of the speed at which it was traveling, to show it to be a speed in excess of 35 miles per hour, so as to take that fact issue from the jury. This we are not prepared to do.

■ It would unduly lengthen this opinion to discuss in detail the cases cited by defendant. None dealt with facts similar to those appearing in the instant case. In determining the question of whether a plaintiff has been contributorily negligent as a matter of law each case must be considered in the light of its own peculiar facts and circumstances. Creech v. Riss & Company, Mo.Sup., 285 S.W.2d 554, 559.

■ Under the evidence and the reasonable inferences to be drawn therefrom the question of whether plaintiff's husband was guilty of contributory negligence is one about which reasonable minds may well differ. Thus the trial court committed no error in submitting the question to the jury.

Defendant's remaining contention is that the court erred in giving plaintiff's Instruction No. 2. This instruction reads as follows:

"Your verdict must be for the plaintiff if you believe: First, defendant either: Failed to keep a careful lookout, or failed to yield the right-of-way, or drove on the wrong side of the road, and Second, defendant's conduct in any one or more of the respects submitted in paragraph First, was negligent, and Third, as a direct result of such negligence, plaintiff sustained damage, unless you believe plaintiff is not entitled to recover by reason of Instruction No. 6."

Defendant does not question the form of the instruction. It was copied from Missouri Approved Instructions, 17.13 and 17.02. He concedes that plaintiff "made a case of primary negligence against the defendant on failure to yield the right-of-way, and probably in failure to keep a lookout." But, he asserts, "driving on the wrong side of the road is a theory of recovery that was not supported by the evidence."

Without dispute the evidence shows the point of impact occurred in the north lane of traffic four feet from the north edge of the highway. At the time of the collision the right wheels of plaintiff's automobile were three or four feet off the pavement on the north shoulder. Plaintiff's husband said defendant made a "longer than normal turn"; that "defendant started turning before he got to the cemetery drive, a car length or two."

Defendant testified that a car length or more from the entrance he was starting out of the middle lane into the north lane. On another occasion he testified that he was about 35 or 40 feet from the driveway when he started his turn into the north lane. Previously the defendant crossed the yellow no-passing line to move into the center lane.

■ The jury could fairly infer from the evidence that from a car length to 40 feet west of the cemetery drive the defendant drove into the north lane of traffic in the path of plaintiff's vehicle and continued in that lane to the point of collision. In our opinion, the physical facts and the testimony support the submission that defendant "drove on the wrong side of the road."

The judgment should be affirmed. Your Special Commissioner so recommends.

PER CURIAM.

The foregoing opinion by BROADDUS, Special Commissioner, is adopted as the opinion of the Court.

All concur.