Ray **ELLISON** (Plaintiff), Appellant-Respondent,

v.

Glenn Marvin **SIMMONS** (Defendant), Appellant-Respondent.

No. 53855.

Supreme Court of Missouri, Division No. 1.

Nov. 10, 1969.

---

1.  References to rules are to Rules of the Supreme Court of Missouri and V.A.M.R.

Church, Jones, Wilson & Karchmer, Richard K. Wilson, Bussell, Hough & Greene, Joe C. Greene, Springfield, for plaintiffs-respondents.

Miller, Fairman, Sanford, Carr & Lowther, F. William Joyner, Springfield, for defendant-appellant.

HOLMAN, Judge.

In this action for damages plaintiff Ray Ellison sought to recover the sum of $50,-000 for injuries received in a collision of his automobile with one driven by defendant. His wife, Ethel, joined in the action and sought judgment for $15,000 for loss of her husband's services and consortium. Defendant filed a counterclaim in which he prayed for judgment in the amount of $10,000 against Ray Ellison for his personal injuries. At the conclusion of all the evidence plaintiffs voluntarily dismissed Count Two of the petition, with prejudice. Since that count involved the claim of Ethel Ellison neither she nor her claim will be further referred to in this opinion. The trial resulted in a verdict for defendant on the claim of plaintiff and also a verdict for defendant in the sum of $3,200 on his counterclaim. The trial court overruled plaintiff's motion for new trial insofar as it related to his claim but granted a new trial on the counterclaim. Plaintiff and defendant have each appealed. We have jurisdiction because of the amount in dispute.

The collision in question occurred in front of plaintiff's home which is located on a blacktop road in what might be described as a rural residential section. The road, called Pleasant Valley Road, runs west from Highway 65 at a point about three or four miles north of Springfield. Plaintiff's house is located a little more than one-fourth mile west of Highway 65. There is a store located at the intersection of Highway 65 and Pleasant Valley Road. On the afternoon of April 14, 1967, plaintiff drove to the store to buy a paper and upon his return home was following a truck driven by his neighbor, George Slater, who lived on the north side of the road a little east of plaintiff's home. After Mr. Slater turned into his driveway plaintiff continued to a point approximately ten feet east of his east driveway (there were two driveways into plaintiff's property) where he stopped in the north lane. Plaintiff testified that he heard the noise of defendant's car coming east and then saw the car come over a slight rise traveling at a fast rate of speed; that as it approached it was "fishtailing," and collided with plaintiff's car. It was plaintiff's recollection at trial time that his car remained facing west in the north lane and that he never started to make a left turn. However, there appears to be no doubt but that the collision actually occurred in the south lane. This is shown by the physical facts in that the witnesses testified that when the collision occurred plaintiff's car was turned around so that it stopped headed east. The photographs and the testimony of those investigating the accident indicate clearly that the swirl marks made when plaintiff's car turned around were all in the south lane. Plaintiff apparently

recognized this situation, as indicated by his testimony that he didn't know where his car was in the road when the collision occurred and that he was not trying to state that his car was on the north side or the south side at the time of the collision. After the collision defendant's car stopped when it struck a tree on the south side of the road 78 feet east of the point of the collision.

The collision was investigated by Highway Patrolman Jerry MacLachlan. He testified that he found continuous skid marks, apparently made by defendant's car, for a distance of 207 feet and continuing to the east line of plaintiff's east driveway; that at a point a short distance from the driveway the wheels on the right side of the car apparently left the pavement and the car continued through the yard to the point where it struck the tree; that the swirl marks made by plaintiff's car started four feet from the south edge of the pavement and were all on the south half of the highway; that the left front of plaintiff's car was damaged, and that the collision was not a true head-on but was at an angle; that there is a slight crest in the road approximately 300 feet west of plaintiff's driveway; that when he talked with the parties later in the day both plaintiff and defendant told him that plaintiff was making a left turn into his driveway.

George Slater testified that he saw the collision; that he had just stopped his truck in his driveway and got out when he heard a roar from the west which sounded like an airplane; that a short time thereafter he saw defendant's car top the crest of the hill "moving terribly fast; I would estimate it at from 80 to 95 miles per hour"; that plaintiff's car was struck "at or a little east of the driveway" while stopped and facing west; that when the collision occurred plaintiff's car was raised and turned around; that from where he stood he could not determine where plaintiff's car was from north to south at the time of the collision.

Another neighbor, Maude Taylor, who lived in the next house to the west, on the south side of the road, testified that defendant's car went by her home at a high rate of speed, "I would say 90 miles per hour." On cross-examination defendant produced a statement which had been taken from this witness, and the witness admitted saying therein that she was not positive about the speed. Further discussion of the use of this statement will appear in connection with one of the points briefed on this appeal.

G. E. Carter, an instructor in Driver Education and Safety, testified that he ran a stopping test for plaintiff in front of plaintiff's home; that he was driving 65 miles per hour and started his effort to stop 246 feet west of the east driveway and stopped at the west edge of the driveway; that he "laid down 180 feet of skid marks." On cross-examination defendant used a book published by the Northwestern Traffic Institute, which was in the possession of the witness, and developed that one chart in that book states that at 65 miles per hour reaction time is 72 feet and stopping distance 380 feet. This evidence will be discussed further in connection with a point raised on this appeal.

Defendant testified that he was attending high school in Springfield and worked in a Springfield restaurant from 4 p. m. to 11 p. m.; that on the day of the accident he was dismissed from school at 3:25 p. m. and drove home where he obtained his work clothes and then started back to Springfield to go to work; that the accident occurred at about 3:45 p. m.; that the car he was driving had been owned by his family for about two weeks and that the mufflers were worn out so that it made quite a bit of noise; that he was driving from 60 to 65 miles per hour; that he first saw plaintiff's car when it was a half mile away but that as he went east plaintiff's car disappeared from sight for an instant; that when he went over the crest west of plaintiff's home (which he estimated to be 400 feet west of the place of

the collision) he saw plaintiff's car stopped in the north lane; that plaintiff's car then turned left in front of him and he hit his brakes and turned to the right; that plaintiff did not give any signal that he was going to turn left; that he thought he had missed plaintiff's car but he evidently hit it; that his car stopped after hitting a tree and that he, defendant, was then unconscious.

We will first consider plaintiff's appeal. His primary contention is that the court erred in giving Instruction No. 3 at the request of defendant. That contributory negligence instruction directed a verdict for defendant upon a finding that plaintiff either "failed to keep a careful lookout, or failed to yield the right of way, or drove on the wrong side of the road." Specifically, plaintiff says that it was error to submit that he "drove on the wrong side of the road" because this was a left turning situation in which that submission is not applicable.

We fully agree that in the usual left turning situation the statutory admonition to drive "upon the right half of the roadway" is not applicable. § 304.015(2) [1]. In that connection it should be noted that under a predecessor statute which required that vehicles be driven as near to the right-hand side of the highway as practicable it was held that such did not apply to vehicles making a left turn at an intersection. Frees v. Hosack, Mo.App., 119 S.W.2d 460; Bennett v. Cauble, Mo.App., 167 S.W.2d 959; Kenny v. Hoerr, 324 Mo. 368, 23 S.W.2d 96, and Melber v. Yourtee, Mo.Sup., 203 S.W.2d 727. However, the situation has since been clarified by statute. Portions of the applicable statute is as follows:

"Upon all public roads or highways of sufficient width a vehicle shall be driven upon the right half of the roadway, except as follows: * * * (2) When placing a vehicle in position for and when such vehicle is lawfully making a left turn in compliance with the provisions of sections 304.014 to 304.026 or traffic regulations thereunder or of municipalities; * * * " § 304.015(2), subd. (2). See also §§ 304.018(3), and 304.021(6).

It follows from the foregoing that plaintiff had a right to make a lawful left turn and thus cross the left half of the road without violating § 304.015(2).

We are mindful that plaintiff testified that he stopped his car in the north lane and had not started his left turn at the time of the collision. We must reject that testimony as it is contrary to the physical facts which show that the collision occurred entirely in the south lane. Since plaintiff was in control of his automobile it must be concluded that he caused it to proceed into that lane. His attorneys in their brief state that they told the jury in the opening statement that plaintiff was turning left into his driveway. This is also in accord with defendant's testimony.

We think it is clear that there was no evidence to support the submission in question unless there was some proof that plaintiff was driving his car on the wrong side of the road in a manner different from the usual left turn. We have concluded that there was not sufficient evidence that plaintiff's car was being driven longitudinally on the left half of the roadway to constitute substantial evidence of a violation of the statute. Plaintiff testified that his car was approximately 10 feet from his driveway when he first saw defendant's car. The damage to plaintiff's car in the collision would tend to indicate that it was angling somewhat to the southwest. Also, Mr. Slater testified that while he could not see the location of plaintiff's car in the road it was facing west. When all this evidence is considered we think the most it tends to prove is that plaintiff's car may have angled from a point approximately 10 feet east of the driveway to the point of collision near the entrance. We

---

1. All statutory references are to RSMo 1959, V.A.M.S.

rule that such is not sufficient evidence to support the submission in question.

Defendant relies on the case of Moore v. Eden, Mo.Sup., 405 S.W.2d 910, in support of his contention that the submission was proper. In that case the car in which plaintiff was riding was westbound when it collided with defendant's eastbound car which was turning left into a cemetery driveway. However, there was testimony to the effect that defendant drove in the north lane of traffic for as much as 40 feet before the collision. That fact clearly distinguishes that case from the instant one.

It follows from the foregoing that the trial court erred in giving Instruction No. 3.

Two other points raised by plaintiff will be briefly discussed because they may recur upon another trial. The first relates to the testimony of Mrs. Taylor. It will be recalled that she stated that defendant's car went by her house, "I would say 90 miles per hour." On cross-examination defendant produced her statement and she admitted saying therein that she was not positive about the speed. On redirect, in an effort to rehabilitate the witness, plaintiff was permitted to read the question and first sentence of the answer, as follows: "Question. What would you estimate its speed to have been? Answer. I don't know, really, it seemed to me like he was going about ninety, I'm not positive, you know, because it just zoomed there when he went by." But plaintiff sought to read a further portion of the answer which apparently was a recitation of her mental processes, as follows: " 'Why,' I said, 'I bet he has a wreck before he goes very far,' because it was too high a speed not to, he couldn't keep from having a wreck if anybody had happened * * * to come by or anything. Even if he hit a little pebble in the road it would have flipped him." The trial court sustained an objection to the reading of that part of the statement. Plaintiff now contends that such was prejudicial error.

We have said that "[t]he trial court has a broad discretion in determining the extent to which additional portions of a statement may be read into evidence to show the context of and circumstances under which the impeaching portion was made for the purpose of minimizing its impeaching force." State v. Beishir, Mo. Sup., 332 S.W.2d 898, 903. It is our view that the portion of the statement read by plaintiff was sufficient to show the context in which the impeaching statement was made. The court did not abuse its discretion in refusing to permit the reading of the portion reciting the thought processes of the witness.

The other point we will consider relates to the cross-examination of plaintiff's witness Carter. He testified concerning a test he performed at plaintiff's request to determine the stopping distance of a car being operated at 65 m. p. h. on the road in question. He had with him while on the witness stand a book entitled "Traffic Accident Investigation Manual." In cross-examining the witness defendant had him read from a chart in the book which showed a stopping distance at 65 m. p. h. which was much farther than the result of the test performed by the witness. Plaintiff contends that the court erred in overruling his objection to that evidence because the chart in the manual constituted hearsay, and also because the witness had not been offered as an expert and hence should not have been cross-examined as such. We do not agree with the assertion that the witness was not offered as an expert. He qualified as an expert and was recognized by the court as such.

We think, however, that the manner in which defendant used the manual in this instance was improper in that it resulted in the admission of the stopping distance shown in the manual as independent evidence of that fact. The objection that it was hearsay should have been sustained. See Appelhans v. Goldman, Mo.Sup., 349 S.W.2d 204 [2, 3], and cases cited therein.

Under certain circumstances it has been held not to be an abuse of the trial court's discretion to permit the use of such a manual in testing the knowledge of an expert on cross-examination. Faught v. Washam, 365 Mo. 1021, 291 S.W.2d 78 [14, 15]. However, we do not think such would have been proper in this instance because the witness did not testify generally concerning his knowledge of stopping distances but simply related the result of this specific test.

The trial court sustained plaintiff's motion for a new trial on defendant's counterclaim on the ground that the court erred in giving defendant's Instruction No. 4. Defendant has appealed from that order. Instruction No. 4 submitted defendant's claim for damages upon the precise assignments of plaintiff's negligence as contained in Instruction No. 3, supra. At first blush it would seem difficult to understand why the trial court considered the submission erroneous in one instruction and not in the other. This can be explained by referring to Tomlin v. Alford, Mo.Sup., 351 S.W.2d 705, which holds that a plaintiff cannot predicate recovery on a theory that is contrary to his own positive evidence but that that rule does not apply to a contributory negligence submission. Defendant would be in the position of a plaintiff in regard to his counterclaim. The court evidently considered defendant's testimony that plaintiff was making a left turn to be in conflict with the submission that he "drove on the wrong side of the road."

However, we need not consider whether the court ruled correctly on the theory outlined, because we have heretofore ruled that there was not sufficient substantial evidence to support the submission that plaintiff "drove on the wrong side of the road" and that ruling will apply to both instructions. It therefore follows that the granting of a new trial because of error in giving Instruction No. 4 was proper.

The judgment for defendant on the claim of plaintiff is reversed. The order of the trial court granting a new trial on defendant's counterclaim is affirmed. The case is remanded for a new trial on all issues.

SEILER, P. J., and GREEN, Special Judge, concur.

STORCKMAN, J., absent.